# FOR PUBLICATION



FILED
Mar 10 2014, 5:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

BRIAN BRADLEY,                    )
                                 )
    Appellant-Defendant,      )
                                 )
        vs.             )    No.  69A04-1306-CR-268
                                 )
STATE OF INDIANA,                )
                                 )
    Appellee-Plaintiff.       )

APPEAL FROM THE RIPLEY SUPERIOR COURT
The Honorable James B. Morris, Judge
Cause No. 69D01-1203-FD-38

**March 10, 2014**

**OPINION - FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Police officers pulled over a car and arrested the driver for possession of marijuana. Officers took her to the county jail, where she revealed that she had purchased the marijuana that day from a man nicknamed Shrek—but whose name was Brian—who lived in a second-floor apartment above the antiques store in town. The officers secured a search warrant for an apartment on the second floor of the building. Upon executing the search warrant, the officers learned that the apartment belonged to a couple, who just happened to have marijuana in their apartment. The couple told police that they had purchased their marijuana earlier that day from Brian a/k/a Shrek, who actually lived on the third floor of the building. The officers then secured a search warrant for Brian Bradley's[1] third-floor apartment. Upon executing this search warrant, the officers found marijuana and other related items.

Brian now appeals his conviction for Class D felony dealing in marijuana. He challenges the first warrant that led to the search of the couple's apartment as well as the warrant for his apartment, arguing that they lacked probable cause. Because Brian, who lived on the third floor of the building, lacked a reasonable expectation of privacy in the couple's second-floor apartment, he cannot challenge the search or seizure of property belonging to the couple. Furthermore, although one particular piece of evidence may not have conclusively established probable cause to search Brian's third-floor apartment, the evidence in the officer's probable-cause affidavit, when fitted together and viewed collectively, is sufficient to support the trial court's finding of probable cause. In addition,

---

[1] We generally refer to defendants by their last names. However, given the facts of this case, we refer to this defendant by his first name, Brian, to avoid any confusion.

2

although the witnesses who provided probable cause changed their stories after the search warrants were issued, the law focuses on the facts known by police and presented to the judge in obtaining the search warrants, not on 20-20 hindsight. We therefore affirm the trial court.

**Facts and Procedural History**

Around 6:40 p.m. on March 25, 2012, Meghan Krekler was pulled over in Batesville, Indiana. Indiana State Police Trooper Travis Cook arrested Krekler for possession of marijuana and transported her to the Ripley County Jail.[2] While at the jail, Krekler was questioned for about an hour about the source of her marijuana. Krekler said that she had purchased the marijuana that day from a man nicknamed Shrek, but whose name—according to friends—was Brian. Krekler described Shrek's apartment and said that she had gone to his door several times to buy marijuana. Tr. p. 163. Krekler described Shrek, and the officers showed her a photo array containing about a dozen photographs. Krekler "identified three men that could possibly be him, but [she] was not sure." *Id.* at 142.

Based on Krekler's account that Shrek lived in a second-floor apartment of the Batesville Antiques building (a three-story building with apartments on the second and third floors) and that she had been to his apartment door several times to buy marijuana, Trooper Cook prepared a probable-cause affidavit in order to obtain a search warrant for the apartment. The judge issued the warrant at 1:15 a.m. on March 26.

---

[2] The State charged Krekler with possession of marijuana, possession of paraphernalia, and "possession of alcohol." Tr. p. 146. Krekler ultimately pled guilty to possession of marijuana and received six months of probation and a six-month license suspension. *Id.*

3

Nine minutes later, Detective Abraham Hildebrand from the Ripley County Sheriff's Department and other officers entered the second-floor apartment. The apartment, however, belonged to the couple Mark Carroll and Amanda Hite. The officers detained Carroll and Hite and found a "user amount" of marijuana. *Id.* at 17. When asked about the source of their marijuana, Carroll and Hite said that they had purchased it from a man on the third floor of their building known as Shrek, but whose name was Brian. Carroll, who provided a physical description of Brian, said that he had purchased the marijuana from Brian earlier that day and that he had paid $40 to $60 for an eighth of an ounce. Hite added that they purchased marijuana from Brian about once a month.[3] They gave a description of the third floor as well as the layout of Brian's apartment. An officer went up to the third floor to verify the location of the apartment doors that Carroll and Hite described.[4]

Comparing the information given by Krekler, Carroll, and Hite, Detective Hildebrand concluded that all three individuals had obtained marijuana from the same source, Brian a/k/a Shrek. Detective Hildebrand then applied for a search warrant for Brian's third-floor apartment. His probable-cause affidavit provides in part:

> On Sunday March 26, 2012, at about 1:24 AM, Your Affiant was assisting the Batesville Police Department and Indiana State Police in the execution of a search warrant at 215 North Walnut apartment B, Batesville in Ripley County. Upon entering the apartment the two occupants, one male and one female, were immediately secured. The female subject was

---

[3] Hite was not charged in connection with this incident. Carroll was charged with possession of marijuana, but the charge was later dismissed. Tr. p. 27.

[4] According to Carroll and Hite, Brian's third-floor apartment had two doors. So, an officer went upstairs to "verify that the information that was given, there were two doors. The furthest one at the end of the hall was the door that was used as the main entrance, but there was another one closer to the stairwell that was not used and that information was verified." Tr. p. 172.

identified as Amanda Jo Hite, and the male subject was identified as Mark A. Carroll.

I was aware that Indiana State Police Trooper Travis Cook had obtained information from a female subject earlier in the day, Meghan Krekeler [sic], had advised him that she purchased marijuana from a male subject who she identified as "Shrek", and that someone told her that his name was Brian.

I was advised by Reserve Corporal Brandon Blessing that the female subject, identified as Amanda Jo Hite, asked him if we were going to "bust" the third floor apartment as well. I then took Hite outside of the building to speak with her further in reference to this inquiry.

After I advised Hite of Miranda I asked her why she was inquiring about the third floor. She stated that the male who lives on the third floor was selling and using marijuana. I then asked her if she knew a male subject who goes by the nickname of "Shrek", and she stated that she was [sic] and that he was the male on the third floor who she identified as Brian. She stated that the marijuana that was in their apartment was purchased from Brian on the third floor earlier that day.

She further stated that they have purchased marijuana from Brian in the past and it was about once a month that they purchase marijuana from him. She also stated that when you walk up the second staircase in the building that his apartment is the only apartment on the right (north) side of the building.

I then spoke with the male occupant of apartment B identified as Mark A. Carroll, and also advised him of Miranda. I then asked him what he could tell me about the third floor apartment. Carroll stated that the male subject who lived [o]n the third floor was named Brian, and that the marijuana found in his apartment was purchased from Brian earlier that day.

Carroll further stated that he purchased the marijuana from Brian and that he paid 40 to 60 dollars for an eighth of an ounce of marijuana. He also stated that Brian lived in apartment D, which was on the right (north) side of the front staircase and that the door to enter the apartment was on the west end of the north side of the hallway of the third floor.

Appellant's App. p. 12-12A. The affidavit also stated that "[t]he apartment is currently occupied by a white male identified as 40 to 50 years old, goatee with scruffy beard, dark wavy hair, [and] goes by the nickname/alias of Shrek." *Id.* at 12. The affidavit described the evidence to be seized as "Marijuana, including stems and seeds and/or Paraphernalia

5

used to manufacture, ingest, weigh, test or enhance the effect of Marijuana or other illicit drugs, as well as any other items which may be identified as evidence." *Id.* at 12.

At 3:15 a.m.—two hours after the first warrant was issued—the same judge issued a warrant to search Brian's third-floor apartment, which was described as follows in the warrant:

> A Third floor apartment on the right side of the staircase, contained within, a brick 2 and half story building with glass storefront windows on the front ground floor of the structure, which is an antique store, and apartments on the upper two floors. More commonly known as 215[5] North Walnut Street, Batesville, in Ripley County. The apartment to be entered and searched is on the North side of the third floor of the structure and has 2 doors on the north side of the third floor, which both lead to the same apartment.

*Id.* at 13. Seventeen minutes later, Detective Hildebrand and other officers entered Brian's third-floor apartment. The layout of the apartment was consistent with Carroll and Hite's description. Tr. p. 200-01. The officers seized sixty-one items, including several plastic bags of marijuana, one of which contained 327.9 grams of marijuana; four sets of scales; ten smoking devices; $528 in cash and rolled coins; a cell phone and laptop; and several firearms.

The State charged Brian with Class D felony dealing in marijuana and Class D felony possession of marijuana (more than thirty grams). Brian filed a motion to suppress the evidence seized from his apartment, arguing that "the search was illegal because it resulted from an invalid warrant." Appellant's Br. p. 8. A hearing was held in February 2013. Detective Hildebrand was the only witness at this hearing. The trial court later denied Brian's motion to suppress, and the case proceeded to a jury trial in April 2013.

_____

[5] Brian's address was actually 213, not 215. However, both numbers were posted on the building. *See* Tr. p. 18.

After the jury was sworn in but before any evidence was presented, the trial court held a hearing outside the presence of the jury to consider again the admissibility of the evidence seized from Brian's apartment. Tr. p. 135. This time, twenty-year-old-college-student Krekler testified. According to Krekler now, she had never directly purchased marijuana from Brian; rather, her friends did so for her. Specifically, on March 25, 2012, Krekler sat in the car outside the Batesville Antiques building while a friend went inside and purchased marijuana from Brian for her using her money. Krekler said that she had only seen Brian riding his scooter on the streets. However, Krekler admitted telling the officers that she had purchased the marijuana directly from Brian. *Id.* at 149, 155. She claimed that she was lying before because she wanted to protect her friends who were "young, like me." *Id.* at 155.

Trooper Cook and Detective Hildebrand also testified. In closing, the State argued that Brian could not assert the constitutional rights of others, the warrant for Brian's third-floor apartment was supported by probable cause, and, in any event, the officers relied upon the warrant in good faith. The trial court found that there was probable cause to issue the search warrant for Brian's third-floor apartment:

> We have three guys, two females and one male, saying that they bought marijuana from Shrek, by the name of Brian and all three of them say it was at that building and in fact, one of them admitted that she lied, that testified to the police, Ms. Krekler, that she purchased it f[rom] him. So, I, looking at the totality of it, I still think that based on each of their . . . corroborating statements, with each other, it still provides probable cause for the issuance of the search warrant as [the judge] found.

*Id.* at 190-91. The evidence seized from Brian's apartment was admitted at trial over Brian's continuing objection.

7

The jury found Brian guilty as charged. The trial court merged the offenses and entered judgment of conviction for the Class D felony dealing offense only. The court sentenced Brian to two-and-a-half years, with one year suspended to probation.

Brian now appeals.

## Discussion and Decision

Brian challenges the first warrant that led to the search of Carroll and Hite's apartment as well as the warrant for his apartment, arguing that they lacked probable cause.

## I. Warrant for Carroll and Hite's Apartment

As an initial matter, Brian challenges the search warrant for Carroll and Hite's apartment because it lacked probable cause. *See* Appellant's Br. p. 17 ("[Brian] contends that because the first warrant lacked probable cause, he is entitled to relief without discussing the second warrant. This is so because police used information gained from the first warrant, which was defective, to support the issuance of the second warrant. Thus anything gained from the Hite/Carroll search would be considered 'fruits of the poisonous tree.'"). The State responds that Brian "lacks standing to assert Fourth Amendment arguments that properly belong to Hite and Carroll." Appellee's Br. p. 11.

Generally, a defendant may not succeed in a complaint of an unreasonable search and seizure unless he has standing to do so. *Willis v. State*, 780 N.E.2d 423, 427 (Ind. Ct. App. 2002). The State must raise a defendant's lack of standing at the trial-court level in order to preserve it for appeal. *Id.* (citing *Everroad v. State*, 590 N.E.2d 567, 569 (Ind. 1992), *reh'g denied*). Thus, "'[w]here the prosecution has failed to make any trial court challenge to standing, the government may not raise the issue for the first time on appeal.'"

8

*Id.* (quoting *Everroad*, 590 N.E.2d at 569)). Likewise, in resolving a claim of unlawful search and seizure, an appellate court should not sua sponte invoke lack of standing. *Id.*

Contrary to Brian's argument, we find that the State adequately raised this issue below. During the prosecutor's final argument at the second hearing, he acknowledged that the first warrant for Carroll and Hite's apartment was under attack. However, he argued that Brian could not assert the rights of Carroll:

> Now, we can argue and try to split hairs here and that is exactly what we are trying to do and not other th[a]n are we trying to split hairs, but we are also attacking the first search warrant that has already been dismissed. I mean, agreed, but unfortunately for [Brian], he can't assert the rights of Mr. Carroll. If the Constitution allowed him to do that, we probably wouldn't be here because yeah, it would all have been dead at that point, but the fruit of the poisonous tree doesn't say, well, you violated somebody else's right, you know earlier, so I am going to walk. That is not the way the Constitution works and we all know it. . . . [I]t comes down to what is on the fac[e] of that warrant. There is probable cause on the face of that warrant. [Brian] cannot assert the rights of Mr. Carroll, if he could, he would win. He can't. The law do[es]n't allow it . . . .

Tr. p. 187-89. During defense counsel's final argument that followed, he disputed many of the State's points but conceded that the State "[wa]s right" about the other issues, which included whether Brian could assert the rights of Carroll. *Id.* at 190. Because the State did not waive this issue, we proceed to the merits.

Although the parties use the word "standing," the United States Supreme Court subsumed the "standing" inquiry into the purview of substantive Fourth Amendment law regarding expectations of privacy in *Rakas v. Illinois*, 439 U.S. 138, 139-40 (1978). *Minnesota v. Carter*, 525 U.S. 83, 87 (1998); *Allen v. State*, 893 N.E.2d 1092, 1096-97 (Ind. Ct. App. 2008), *reh'g denied*, *trans. denied*. In order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally had an expectation

9

of privacy in the place to be searched and that his expectation was reasonable. *Carter*, 525 U.S. at 88. Fourth Amendment rights are personal and may not be vicariously asserted. *Rakas*, 439 U.S. at 133-34; *Allen*, 893 N.E.2d at 1096. A defendant aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by the search of a third person's premises has not had any of his Fourth Amendment rights infringed. *Rakas*, 439 U.S. at 134; *Allen*, 893 N.E.2d at 1096; *see also Johnson v. State*, 472 N.E.2d 892, 898-99 (Ind. 1985) (holding that a defendant has no constitutional right to challenge the search or seizure of property belonging to a third party, even if the search was without probable cause), *reh'g denied*.

In this case, Brian, who lived on the third floor of the building, lacked a reasonable expectation of privacy in Carroll and Hite's second-floor apartment. Accordingly, the search of Carroll and Hite's apartment did not violate Brian's Fourth Amendment rights.

Brian, however, argues that the State did not raise standing under the Indiana Constitution and has therefore waived it. Appellant's Reply Br. p. 6. Standing to challenge a search or seizure under Article 1, Section 11 of the Indiana Constitution differs slightly than that under the Fourth Amendment. Specifically, the Indiana Constitution provides protection for claimed possessions irrespective of the defendant's interest in the place where the possession was found. *Campos v. State*, 885 N.E.2d 590, 598 (Ind. 2008). However, where a defendant's interest in seized property is not at issue, there is no difference between the results under the federal and state constitutions. *Allen*, 893 N.E.2d at 1097. Because Brian does not claim that he has any interest in the marijuana found in Carroll and Hite's apartment, state constitutional protection is not at issue; therefore,

10

resolution of this issue under the Indiana Constitution would be the same as that under the United States Constitution. *Id.* at 1099; *see also Campos*, 885 N.E.2d at 596 ("Many search and seizure issues are resolved in the same manner under both the Indiana and Federal Constitutions."); *Peterson v. State*, 674 N.E.2d 528, 534 (Ind. 1996) ("Indiana law has also imposed a requirement of standing to challenge a search or seizure—a defendant cannot successfully object to a search of the premises of another if such search does not unlawfully invade his own privacy. If the facts fail to establish that the alleged illegal search and seizure actually concerned the person, house, papers or effects of the defendant, he will not have standing [under the Indiana Constitution] to challenge the illegality." (citation omitted), *reh'g denied*). So even if we found that the State did not properly preserve this issue under the Indiana Constitution, we would find the error to be harmless.

Furthermore, in light of our conclusion that Brian cannot challenge the search or seizure of property from Carroll and Hite's apartment, we do not need to address the State's argument that Trooper Cook's probable-cause affidavit and the resulting warrant that led to the search of Carroll and Hite's apartment are not properly part of the record in this case.

## II. Warrant for Brian's Apartment

Brian contends that the trial court erred in admitting the evidence seized from his apartment because it was obtained pursuant to a search warrant unsupported by probable cause. Both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution require probable cause for the issuance of a search warrant. *Smith v. State*, 982 N.E.2d 393, 404 (Ind. Ct. App. 2013), *trans. denied*. The Fourth Amendment to the United States Constitution provides, "The right of the people to be

11

secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. The text of Article 1, Section 11 of the Indiana Constitution contains nearly identical language. *State v. Spillers*, 847 N.E.2d 949, 953 (Ind. 2006). Probable cause is a fluid concept incapable of precise definition and must be decided based on the facts of each case. *Smith*, 982 N.E.2d at 404. In deciding whether to issue a search warrant, the issuing magistrate's task is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. *Id.* at 238-39. A substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Spillers*, 847 N.E.2d at 953. A "reviewing court" for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision. *Id.* Although we review de novo the trial court's substantial-basis determination, we nonetheless afford significant deference to the magistrate's determination as we focus on whether reasonable inferences drawn from the totality of the evidence support that determination. *Id.* "The decision to issue the warrant should be based on the facts stated in the affidavit and the rational and reasonable inferences drawn

12

therefrom." *Utley v. State*, 589 N.E.2d 232, 236 (Ind. 1992); *see also Casady v. State*, 934 N.E.2d 1181, 1189 (Ind. Ct. App. 2010) (noting that we consider only the evidence presented to the issuing magistrate, not after-the-fact justifications for the search), *reh'g denied*, *trans. denied*. In determining whether an affidavit provided probable cause for the issuance of a search warrant, doubtful cases should be resolved in favor of upholding the warrant. *State v. Shipman*, 987 N.E.2d 1122, 1126 (Ind. Ct. App. 2013).

The federal and state constitutional principles requiring probable cause before a search warrant can be issued are codified in Indiana Code section 35-33-5-2, which details the information to be contained in an affidavit for a search warrant. *Spillers*, 847 N.E.2d at 953. Where, as here, a warrant is sought based on hearsay information, the affidavit must either:

> (1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or
> (2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

Ind. Code § 35-33-5-2(b)(1) & (2). The trustworthiness of hearsay for the purpose of proving probable cause can be established in a number of ways, including where: (1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant's statements, (3) some basis for the informant's knowledge is demonstrated, or (4) the informant predicts conduct or activity by the suspect that is not ordinarily easily predicted. *Spillers*, 847 N.E.2d at 954. These examples, however, are not exclusive. "'Depending on the facts, other considerations may come into play in

13

establishing the reliability of the informant or the hearsay.'" *Id.* (quoting *Jaggers v. State*, 687 N.E.2d 180, 182 (Ind. 1997)).

We find that Detective Hildebrand's probable-cause affidavit contains information that establishes that the totality of the circumstances corroborates the hearsay. "Sufficiency need not rest on a single piece of information, but rather in the way the pieces fit together." *Utley*, 589 N.E.2d at 236. Here, there are bits and pieces of evidence tending to show probable cause that marijuana would be found in Brian's third-floor apartment. Although each declarant, standing alone, may not have conclusively established probable cause, the evidence in the affidavit, when fitted together and viewed collectively, is sufficient to support the trial court's finding of probable cause. As recounted in Detective Hildebrand's affidavit, Krekler told police earlier that day that she had purchased the marijuana from a man nicknamed Shrek, but whose name was Brian.[6] Shrek is a conspicuous name.

---

[6] We acknowledge that Krekler testified to a different version of events at the second hearing. Specifically, she claims she lied to police about having met Brian or having purchased marijuana directly from him. However, Krekler admitted telling police during questioning that she went to his apartment door to buy the marijuana. Tr. p. 149, 155. As such, police were not armed with Krekler's changed story when they sought the second search warrant for Brian's third-floor apartment just hours later.

In addition, the dissent points to Carroll's trial testimony, where he appears to backtrack from what he initially told police. Specifically, Carroll testified that he never purchased marijuana from Brian or anybody for that matter, but his girlfriend Hite probably purchased marijuana from Brian. When asked if the marijuana found in their apartment came from Brian, Carroll responded, "Sir, I don't know if I can say yes or no. I don't know if, you know, I assumed that that was the case because once Mr. Hildebrand told me that [is what] [Hite] said, I tend to believe my girlfriend." *Id.* at 273. However, he said that he took the blame for it then. *Id.* at 272. The prosecutor asked Carroll to verify whether the following statement in the probable-cause affidavit was accurate: "Carroll stated that the male subject who lived [o]n the third floor was named Brian, and that the marijuana found in his apartment was purchased from Brian earlier that day." Appellant's App. p. 12(A). Brian answered:

> Ok. The first thing you said that his name was Brian. They came in my house with the name of Shrek. We gave them the name Brian, when they asked us what his name was. So, I did confirm that his name was Brian, yes that is correct. Once he told me, Mr. Hildebrand told me that [Hite] had said that she purchased the marijuana from Brian, that we had purchased the marijuana from Brian and I confirmed that, to the best of my knowledge, that's correct.

14

Likewise, Hite told police that Brian a/k/a Shrek had sold marijuana to her and Carroll. This information is consistent with marijuana being found in Carroll and Hite's apartment. Hite further explained that the marijuana found in their apartment was purchased from Brian earlier that day from his third-floor apartment. *See* Appellant's App. p. 12A ("[Hite] stated that the marijuana that was in their apartment was purchased from Brian on the third floor earlier that day."). Detective Hildebrand then spoke separately with Carroll, who gave substantially the same information as Hite. That is, Carroll said that the man who lived in the third-floor apartment was named Brian and that he had purchased the marijuana found in their apartment from Brian earlier that day. Looking at all of these circumstances together, Krekler and Hite identified Brian and Shrek as being the same person. Hite and Carroll then described Brian's location in a way that matched Brian's third-floor apartment, both inside and out. Krekler, Hite, and Carroll gave statements that were consistent in that they all identified Brian as the recent source of their marijuana.

Although one particular piece of evidence may not have conclusively established probable cause, the evidence in the affidavit, when fitted together and viewed collectively, is sufficient to support the trial court's finding of probable cause under both the United States and Indiana Constitutions.[7] As a result of this conclusion, we do not need to address

---

Tr. p. 277. To the extent that Brian testified to a different version of events at trial, like Krekler, police were not aware of this when they sought the second search warrant for Brian's third-floor apartment.

The dissent focuses on facts claimed by Krekler and Carroll at the time of trial. These facts, however, are far different than those known by police and presented to the judge in obtaining the search warrants. The test for the legality of a search warrant focuses on the facts presented to the issuing judge, not on facts alleged after the warrant was issued.

[7] The State argues that Brian has waived the issue under the Indiana Constitution by not making a cogent argument. Appellee's Br. p. 17 n.5. Regardless of waiver, we find that the result is the same under the Indiana Constitution. Although Article 1, Section 11 of the Indiana Constitution appears to have been derived from the Fourth Amendment and shares the same language, we interpret and apply it independently

15

whether the good-faith exception applies.  Because the trial court properly admitted the evidence seized from Brian's third-floor apartment, we affirm his conviction for Class D felony dealing in marijuana.

Affirmed.

MAY, J., concurs.

RILEY, J., dissents with separate opinion.

---

from Fourth Amendment jurisprudence.  *State v. Bulington*, 802 N.E.2d 435, 438 (Ind. 2004).  Rather than looking to federal requirements such as warrants and probable cause when evaluating Section 11 claims, we place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable.  *Id.*  Based on the above facts, we find that police acted reasonably and therefore there is no violation of the Indiana Constitution.

# IN THE
# COURT OF APPEALS OF INDIANA

BRIAN BRADLEY,                      )
                                    )
    Appellant-Defendant,            )
                                    )
       vs.                        )    No.  69A04-1306-CR-268
                                    )
STATE OF INDIANA,                   )
                                    )
    Appellee-Plaintiff.             )

**RILEY, Judge, dissenting.**

While I agree with the majority that Brian does not have standing to challenge the validity of the initial warrant, executed in the apartment of Carroll and Hite, I respectfully dissent from the majority's decision to affirm Brian's conviction. Based on the totality of the circumstances, I do not find that there was sufficient probable cause to justify the issuance of the second search warrant.

In this case, the probable cause supporting the warrant to search Brian's apartment was derived solely from the hearsay statements of three individuals—Krekler, Hite, and Carroll. In order to form the basis for probable cause, hearsay must be reliable. *Methene v. State*, 720 N.E.2d 384, 388 (Ind. Ct. App. 1999). It is well-established that "uncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause to issue a search warrant." *Jaggers v. State*, 687 N.E.2d 180, 182 (Ind. 1997) (citing *Illinois v. Gates*, 462 U.S. 213, 227 (1983)).

17

Accordingly, the probable cause affidavit must contain sufficient information to establish that each of the hearsay declarants is credible and that there is a factual basis supporting the information provided, *or* to establish that the hearsay is corroborated by the totality of the circumstances. Ind. Code § 35-33-5-2(b). The reliability of hearsay may be demonstrated in several ways: "(1) the informant has given correct information in the past; (2) independent police investigation corroborates the informant's statements; (3) some basis for the informant's knowledge is shown; or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted." *Jaggers*, 687 N.E.2d at 182.

As the majority notes, it is our task on review to assess whether the issuing judge had a substantial basis for finding probable cause. In this case, the facts stated in Detective Hildebrand's probable cause affidavit, along with "the rational and reasonable inferences drawn therefrom[,]" do not establish that the hearsay is reliable. *Utley v. State*, 589 N.E.2d 232, 236 (Ind. 1992). The affidavit neither informs the issuing judge that any of the three individuals previously acted as a reliable informant, nor states that the informants correctly predicted Brian's future actions. *See Jaggers*, 687 N.E.2d at 182. Furthermore, the affidavit is devoid of details regarding whether the police investigated the informants' statements to independently substantiate the information. In fact, the police officers conceded that they made no effort to verify the informants' credibility or otherwise link Brian to the crime of dealing marijuana. *See Newby v. State*, 701 N.E.2d 593, 602 (Ind. Ct. App. 1998). During the trial, Detective Hildebrand testified that a police officer was sent to the third floor "to verify the locations of the [apartment] doors[,]" as described by

18

Carroll and Hite. (Transcript p. 172). This information was omitted from the affidavit, and our court has previously established that simply knowing an address "is not indicative of having any 'inside' information" to connect that person with the alleged crime. *See Snover v. State*, 837 N.E.2d 1042, 1049 (Ind. Ct. App. 2005).

Regarding the basis for Krekler's knowledge, the affidavit relies on "hearsay within hearsay"—that is, Krekler informed Trooper Cook, who then told Detective Hildebrand that Krekler had purchased marijuana from a man named Shrek, and she had heard from someone else that his name was Brian. *See Newby*, 701 N.E.2d at 598. The affidavit does not mention when or *where* Krekler purchased the marijuana, nor does it describe her familiarity or previous encounters with "Shrek" or any other details to link Brian to the drug sale. *See Hensley v. State*, 778 N.E.2d 484, 488 (Ind. Ct. App. 2002) (finding no probable cause because the affidavit "did not link [informant's] alleged purchase of methamphetamine with the premises described in the affidavit"). At the time they executed the warrant, the police may have been unaware that Krekler was lying when she stated that she had purchased marijuana from Shrek on five or six occasions from his *second*-floor apartment in Batesville—details which were absent from the probable cause affidavit. Nonetheless, the police officers certainly had reason to doubt the trustworthiness of her statements. Krekler's inability to identify Brian's presence in or absence from a set of mug shots—despite having interacted with him on multiple occasions—should have prompted the police officers to, at a minimum, conduct some independent research prior to applying for a warrant. Furthermore, the officers indisputably knew that Krekler was an unreliable informant after they unlawfully barged into the wrong apartment based on her statements;

19

nevertheless, Detective Hildebrand stubbornly relied upon her implication of "Shrek" in the subsequent affidavit.

As to Carroll's and Hite's bases for knowledge, the affidavit claims that Carroll purchased the marijuana directly from Brian, and Hite explained that they had purchased marijuana from him on a monthly basis. Generally, firsthand observations of the crime "entitles the tip to 'greater weight than might otherwise be the case.'" *Jaggers*, 687 N.E.2d at 183 (quoting *Gates*, 462 U.S. at 234). Here, though, the affidavit includes no evidence for the issuing judge to assume that Carroll and Hite, who are in a relationship and who had just been caught with illicit drugs in their possession, are credible. *See Bryant v. State*, 655 N.E.2d 103, 108 (Ind. Ct. App. 1995).

In contrast to the affidavit, Carroll testified that Hite actually purchased the marijuana, that he had never purchased any drugs from Brian, that he had no "reason to believe that [Hite] got marijuana f[ro]m Shrek," and that he had falsely admitted to purchasing the marijuana in order to protect Hite. (Tr. p. 272). Furthermore, Carroll explained that, *after* questioning Hite,

> [Detective Hildebrand] brought me on the front porch of my apartment building, in front of my neighbors, and told me that my girlfriend [said] that we have purchased the marijuana from Brian or Shrek, they didn't know his name, that we had purchased it from him and she told him all about it and so he wanted to know how much we had paid for it and how many times we bought it from Shrek.

(Tr. p. 268). Detective Hildebrand informed Carroll that Hite reported that they paid "between forty and sixty dollars" to Shrek, so Carroll said, "[T]hat sounds good to me." (Tr. p. 276).

The majority finds probable cause exists because of the way the pieces of information all fit together. However, the informants' claims that they purchased marijuana from a man named Brian, whose nickname is Shrek, are the *only* details corroborated by all three individuals. Without some other indicia of the informants' credibility or other *reliable* corroboration, the unique nickname does not, in itself, give rise to probable cause. *See Cheever-Ortiz v. State*, 825 N.E.2d 867, 872-73 (Ind. Ct. App. 2005) (finding sufficient probable cause following a tip that "Cookie" had received a large marijuana shipment because, although the police knew "that Cheever-Ortiz used the 'street name of Cookie,'" the informant also provided correct information about a previous investigation concerning "Cookie," *and* the officers investigated other sources and conducted surveillance prior to obtaining the warrant).

Not only did the police officers decline to investigate the matter, the affidavit fails to explain that the police learned information about Brian while executing an invalid warrant in Carroll and Hite's apartment based on Krekler's faulty statements. *See Ware v. State*, 859 N.E.2d 708, 718 (Ind. Ct. App. 2007) ("[A] probable cause affidavit must include all material facts, which are those facts that 'cast doubt on the existence of probable cause.'") (quoting *Query v. State*, 745 N.E.2d 769, 772 (Ind. 2001)). Brian does not have the standing to argue that the police unlawfully obtained the evidence from Carroll and Hite, but it is an underlying fact contributing to the totality of the circumstances that the officers applied for a warrant based entirely on unreliable hearsay, busted into in the wrong apartment, and proceeded to apply for a second warrant without pausing to consider their sources.

21

In cases like this—where the officers ultimately found marijuana, but only did so by disregarding the mandates of probable cause—our justice system pays the price. The "privacy of all Hoosiers" is put in jeopardy when constitutional protections are circumvented in order to secure evidence. *Brown v. State*, 653 N.E.2d 77, 80 (Ind. 1995). I find the totality of the information contained in the probable cause affidavit to be insufficient for the issuing judge to determine that evidence of dealing marijuana would be found in Brian Bradley's apartment. Based on the foregoing, I would conclude that the evidence admitted at Brian's trial was unlawfully seized from his apartment pursuant to a search warrant unsupported by probable cause; thus, I would reverse.[8]

---

[8] I would also conclude that the search of Brian's apartment violated his rights under the Indiana Constitution. Based on their lack of diligence, I find that the totality of the circumstances does not demonstrate that the police acted reasonably in obtaining the search warrant. *See Brown*, 653 N.E.2d at 80. In addition, based on the evidence, I find that the police officers failed to comply with their "duty and obligation of full and fair disclosure of all material facts when applying for a warrant" and would conclude that the good faith exception does not apply. *Hayworth v. State*, 904 N.E.2d 684, 698 (Ind. Ct. App. 2009).