## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 12 2018, 9:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Derick W. Steele
Deputy Public Defender
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Plaintiff,*

v.

Ryan Stabler,

*Appellee-Defendant*

July 12, 2018

Court of Appeals Case No.
18A-CR-166

Appeal from the Howard Superior Court

The Honorable George A. Hopkins, Judge

Trial Court Cause No.
34D04-1709-F4-162

**Baker, Judge.**

[1] The State appeals the trial court's suppression of evidence found during a search of Ryan Stabler's residence, arguing that the trial court erred by suppressing the evidence. Finding that the trial court erred, we reverse and remand.

## Facts

[2] Before September 19, 2017, the Kokomo Police Department had received complaints about illegal narcotics being sold from Stabler's residence. On September 19, 2017, the manager of Mac's Market, which is adjacent to Stabler's residence, reported "a large amount of traffic in and out of the rear of that residence" and that "people would exit the rear of that residence . . . and they would go and use [the store's] bathroom and leave needles behind." Tr. p. 5.

[3] At approximately 6:20 p.m. that day, Kokomo Police Officer Adam Martin and other officers began surveilling Stabler's residence. They monitored Stabler's residence for a few hours, during which they made contact with three individuals after they left the residence.

[4] The officers observed Brett Ray enter the rear of the residence and exit within minutes. Ray "was stumbling all over the alley." State's Ex. 1. As Officer Martin exited his patrol car, Ray "immediately stuck his hands in his front pocket and pulled it out very quickly" and turned away from the officer. *Id.* Ray said he had been at Mac's Market and was walking home. After the officer told him that he was free to go, the officer walked to where he had observed

Ray stick his hands in his pockets. Officer Martin saw a small clear plastic bag that had a gray rock-like substance in it on the ground next to his car; the substance was found to be heroin. Officer Martin then caught up with Ray and arrested him. Ray admitted that he threw the heroin on the ground when he saw the officer approach and that he had just come from Stabler's house, where he had bought fifty dollars' worth of heroin from Stabler.

[5] Shortly thereafter, a pickup truck arrived at the house and left soon after. Officer Martin initiated a traffic stop on the vehicle. Jeremy Mitchell, the driver, immediately put something in his mouth and took a drink. Officer Martin suspected it was drugs. As a result of the traffic stop, Mitchell was arrested for possession of a syringe. He admitted that he used heroin and had just left Stabler's house.

[6] Following that stop, Officer Martin initiated another traffic stop on a vehicle that had stopped at Stabler's house for a few minutes. During the stop, Dustin Castleman, the passenger, ran from the vehicle. The officer caught him and arrested him on active warrants for possession of a controlled substance.

[7] Based on this investigation, Officer Martin completed a search warrant request and affidavit, seeking to search Stabler's home and a vehicle. The affidavit stated that Officer Martin and the other officers

> began doing active surveillance on the residence of 1816 S
> Courtland in reference to numerous complaints of illegal
> narcotics being sold from this residence by Ryan Stabler . . . .
> The manager of Macs market [sic] which is directly to the east of

> this residence said there is a heavy amount of foot traffic coming from the rear of the residence and the people use there [sic] restrooms and leave [numerous] amounts of syringes in the restroom.

*Id.* The affidavit then described Officer Martin's interactions with Ray, Mitchell, and Castleman. The search warrant described the property as

> 1816 S Courtland Kokomo, [] IN 46902, described as a Tan 1 story Tan sided house with dark colored shingles and the front door facing West as well as a Silver Dodge Stratus parked in the rear of the residence that is driven by Ryan Stabler . . . .

*Id.*

[8] Stabler's residence is a one-story tan house with dark shingles, but the address is actually 1806 South Courtland. The incorrect address included in the affidavit and search warrant—1816 South Courtland—does not exist. On September 19, 2017, a trial court judge signed the search warrant, and the officers searched Stabler's house that same day. During the search, the officers found Stabler, other individuals, heroin, methamphetamine, an unidentified substance, prescription drugs, two digital scales, various smoking devices, and a ledger. The search warrant return was signed by Officer Martin and dated September 20, 2017. It included the correct address and acknowledged the incorrect address that was in the affidavit and search warrant.

[9] On September 20, 2017, the State charged Stabler with Level 4 felony dealing in methamphetamine, Level 4 felony dealing in a narcotic drug, Level 6

possession of methamphetamine, Level 6 felony possession of a narcotic drug, Level 6 felony maintaining a common nuisance, and Class A misdemeanor possession of a controlled substance. On October 31, 2017, Stabler filed a motion to suppress, arguing that the search violated his rights under the federal and state constitutions.

[10] On November 15, 2017, a suppression hearing took place. During the hearing, Officer Martin testified that the address in the search warrant and affidavit was a typographical error, that he accurately described Stabler's house in the search warrant request, and that he searched the house he had intended to search. Officer Martin further testified that he likely gave the search warrant return to his captain, that someone in the police department would have placed a copy in the police records and taken another copy to the issuing judge, and that he did not know who in the department did that or when.

[11] The trial court granted Stabler's motion, identifying the following relevant concerns:

- The affidavit does not establish the foundation for the surveillance of the house. It does not provide the source or verify the credibility of the numerous complaints of illegal narcotics being sold from the house. It also does not identify the manager of Mac's Market who reported that people leave the house and use and leave syringes in the market's restrooms; it does not verify the manager's credibility; it does not state when or if the officers obtained the information from the manager; and it does not state that the officers attempted to verify the information provided by the manager.
- Brett Ray admitted that he purchased heroin while he was in the house, and his admission was against his penal interest. The other two people

the officers intercepted during surveillance did not tell the officers what took place or what they saw while they were in the house.

- An incorrect address is included in the affidavit and search warrant. The search warrant describes the appearance of the house, but the affidavit does not, and no evidence about the appearance of the house was provided to the court that issued the search warrant.
- The return of the search warrant did not comply with the statute that governs that procedure.

[12] The State filed a motion to correct error, arguing for the first time that the good faith exception to the warrant requirement should apply. The trial court denied that motion. The State then filed a motion to dismiss the charges based on the trial court's order, which the trial court granted. The State now appeals.

# Discussion and Decision

[13] The State's sole argument on appeal is that the trial court erred by granting Stabler's motion to suppress. It offers several bases for its argument, which we restate as: the search warrant and affidavit meet statutory requirements to establish probable cause, the typographical error does not invalidate the search warrant, and no procedural error occurred in the filing of the search warrant return.[1]

---

[1] The State also contends that the good faith exception applies here, making suppression improper. Under this exception, a "court may not grant a motion to exclude evidence on the grounds that the search or seizure by which the evidence was obtained was unlawful if the evidence was obtained by a law enforcement officer in good faith." Ind. Code § 35-37-4-5(a). However, the first time the State raised this issue to the trial court was in its motion to correct error. A party may not raise an issue for the first time in a motion to correct error. *Van Winkle v. Nash*, 761 N.E.2d 856, 859 (Ind. Ct. App. 2002). Failure to raise an issue before the trial court will result in waiver of that issue. *Id.* The State's argument regarding the good faith exception, therefore, is waived.

[14]     When reviewing a trial court's ruling on a motion to suppress evidence, we must determine whether substantial evidence of probative value supports the trial court's decision. *State v. Seidl*, 939 N.E.2d 679, 683 (Ind. Ct. App. 2010). Where a trial court grants a motion to suppress, the State appeals from a negative judgment and must show that the trial court's grant of the motion was contrary to law. *Id.* We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.* We will not reweigh the evidence nor judge witnesses' credibility, and will consider only the evidence most favorable to the trial court's ruling. *Id.*

[15]     The law regarding the probable cause requirement for a search warrant is well established:

> Probable cause is a fluid concept incapable of precise definition and must be decided based on the facts of each case. In deciding whether to issue a search warrant, the issuing magistrate's task is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. A substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. A "reviewing court" for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision. Although we review de novo the trial court's substantial-basis determination, we nonetheless afford significant deference to the

magistrate's determination as we focus on whether reasonable inferences drawn from the totality of the evidence support that determination. "The decision to issue the warrant should be based on the facts stated in the affidavit and the rational and reasonable inferences drawn therefrom." *Utley v. State*, 589 N.E.2d 232, 236 (Ind. 1992). In determining whether an affidavit provided probable cause for the issuance of a search warrant, doubtful cases should be resolved in favor of upholding the warrant.

*Bradley v. State*, 4 N.E.3d 831, 840 (Ind. Ct. App. 2014) (citations omitted).

[16] Indiana Code section 35-33-5-2 governs the information to be contained in an affidavit for a search warrant. It provides in relevant part that

> (a) . . . no warrant for search or arrest shall be issued until there is filed with the judge an affidavit:
>
>> (1) particularly describing:
>>
>>> (A) the house or place to be searched and the things to be searched for; or
>>>
>>> (B) particularly describing the person to be arrested;
>>
>> ***
>>
>>> (3) setting forth the facts known to the affiant through personal knowledge or based on hearsay, constituting the probable cause.
>
> (b) When based on hearsay, the affidavit must either:

> (1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or
>
> (2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

Ind. Code § 35-33-5-2.

[17] The trustworthiness of hearsay for the purpose of proving probable cause can be established in a number of ways, including where: (1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant's statements, (3) some basis for the informant's knowledge is demonstrated, or (4) the informant predicts conduct or activity by the suspect that is not ordinarily easily predicted. *Bradley*, 4 N.E.3d at 840-41. These examples are not exclusive, and depending on the facts, other considerations may help establish the reliability of the informant or the hearsay. *Id.* at 841.

[18] First, the trial court found the affidavit lacking information about the credibility of the complaints received about the house and of the report from the manager of Mac's Market. An affidavit must set forth the facts known to the affiant through personal knowledge or based on hearsay that constitute the probable cause. I.C. § 35-33-5-2(a)(3). When the affidavit is based on hearsay, as it was here, the affidavit is valid if it contains information that establishes that the totality of the circumstances corroborates the hearsay. I.C. § 35-33-5-2(b)(2).

[19] We find that Officer Martin's probable cause affidavit contains information that establishes that the totality of the circumstances corroborates the hearsay. "Sufficiency need not rest on a single piece of information, but rather in the way the pieces fit together." *Utley*, 589 N.E.2d at 236. Here, the pieces of evidence, when put together and viewed collectively, sufficiently establish probable cause to search Stabler's residence. Officer Martin stated in his affidavit that, as the officers were conducting surveillance, they observed three individuals enter the residence for a short period of time. Officer Martin stopped the individuals when they left the residence. One of the individuals dropped a substance that tested positive for heroin; he admitted that he had just been at Stabler's house, where he had bought fifty dollars' worth of heroin from Stabler. "Declarations against penal interest can furnish sufficient basis for establishing the credibility of an informant[.]" *Houser v. State*, 678 N.E.2d 95, 100 (Ind. 1997). The next individual swallowed something when approached by the officers and was found in possession of a syringe. The third individual fled from the police, and when caught, was arrested on open warrants for drug possession. This independent police investigation corroborates the reports that illegal activities had been taking place inside Stabler's house. Thus, the evidence in the affidavit, when viewed collectively, sufficiently supports a finding of probable cause.

[20] Second, the trial court also noted the incorrect address in the affidavit and search warrant, stating that although the search warrant describes the appearance of the house, the affidavit does not. Initially, we note that the

affidavit includes an address that has one incorrect digit and states that Mac's Market is "directly to the east of this residence." State's Ex. 1. The search warrant described the residence as a tan one-story house with dark shingles and a front door facing west. Officer Martin testified that the incorrect address was a typographical error, that "1816 South Courtland" does not exist, and that the subsequent search was conducted at Stabler's house.

[21] Indiana courts have repeatedly upheld search warrants despite scrivener's errors in the address as long as the warrant otherwise sufficiently described the place to be searched. *E.g.*, *Creekmore v. State*, 800 N.E.2d 230, 235-37 (Ind. Ct. App. 2003) (finding that incorrect directional coordinates in the search warrant did not require suppression in part because, despite the mistake, the warrant sufficiently described the property to be searched); *Houser*, 678 N.E.2d at 101 (finding that the incorrect address in the search warrant did not invalidate the warrant because the warrant sufficiently described the property to be searched despite the mistake and the error was an innocent one). Although we do not condone the use of search warrants containing an incorrect street address, the warrant in this case sufficiently described the property to be searched despite the mistake. The record shows that the mistake was an innocent one and did not affect the probable cause determination. This mistake does not require suppression.

[22] Finally, the trial court also expressed concern over the way in which the search warrant return was filed. In its order, the trial court found that the "officer who executes a search warrant is required to make a return of the warrant to the

judge who issued the warrant," citing Indiana Code section 35-33-5-4. Indiana Code section 35-33-5-4 provides that "[t]he officer who executed the warrant shall make a return on it directed to the court or judge, who issued the warrant, and this return must indicate the date and time served and list the items seized." In other words, the statute only requires the officer who executed the warrant to *direct* the return to the issuing court or judge; it contains no requirement that the officer himself personally file the return. Thus, here, Officer Martin fulfilled his statutory duty by submitting the return to his police unit for filing.

[23] The trial court further noted that the search warrant return was filed two months after the search, and that "[t]he entry does not provide any information justifying the delay of the return to the court." Appealed Order p. 3. A delay in filing a return, however, does not require suppression of evidence as long as the defendant is not prejudiced. *See, e.g.*, *Webster v. State*, 579 N.E.2d 667, 670 (Ind. Ct. App. 1991) (finding that a return that was not filed until a year after the search did not invalidate the search warrant because there is no requirement that the return be filed within a specific amount of time and there was no showing that the defendant was harmed by the delay). Here, there was no finding or evidence that Stabler was harmed by the delayed filing.[2] The way in which the search warrant was returned does not require suppression.

_____

[2] The trial court was also concerned that the search warrant authorized the search of a vehicle at Stabler's residence because the affidavit does not refer to any vehicle, does not indicate how Officer Martin knew whether the vehicle was driven by Stabler, and does not indicate whether any relationship existed between the vehicle and any activities in the house. We agree with the trial court that the inclusion of the vehicle in the search warrant is improper because the supporting affidavit does not particularly describe the vehicle to

In sum, despite the mistake in the address, the affidavit and search warrant are valid, and the evidence seized does not require suppression.

The judgment of the trial court is reversed and remanded.

Kirsch, J., and Bradford, J., concur.

---

be searched as required by Indiana Code section 35-33-5-2. However, because the search warrant return identifies no evidence found in the vehicle, this issue is moot.

The trial court also noted that the search warrant return shows that Stabler and another individual were searched even though the search warrant does not authorize the search of any individuals. We find no error with this issue. Once the officers executed the search warrant, entered the house, and observed illegal substances, they had probable cause to arrest the individuals inside. Once the individuals were arrested, the officers could conduct a search incident to arrest.