## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 14 2017, 9:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brandon Mockbee, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | November 14, 2017 <br><br> Court of Appeals Case No. <br> 15A01-1703-CR-483 <br><br> Appeal from the Dearborn Circuit Court <br><br> The Honorable James D. Humphrey, Judge <br><br> Trial Court Cause No. <br> 15C01-1607-F5-49 |

**Crone, Judge.**

# Case Summary

Brandon Mockbee appeals his convictions, following a jury trial, for two counts of level 5 felony burglary and one count of level 6 obstruction of justice. He also appeals the jury's finding that he is a habitual offender. On appeal, Mockbee asserts that the State presented insufficient evidence to support the habitual offender determination and his obstruction of justice conviction. He also claims that the trial court abused its discretion in admitting certain evidence, in denying his motion for severance, and in revoking his right to represent himself at trial. Finding the evidence sufficient and no abuse of discretion, we affirm his convictions. However, we sua sponte remand with instructions for the trial court to amend the sentencing order to attach the habitual offender sentence enhancement to the sentence on one of Mockbee's level 5 felony burglary convictions.

# Facts and Procedural History

On June 16, 2016, at 11:45 p.m., officers responded to a report from an alarm company that "there was glass breakage" at Hibbett Sports in Aurora. Tr. Vol. 6 at 34. When they arrived, they observed that the front door was shattered and a large rock was about ten feet inside the store. After investigating, officers discovered that "a large quantity of the Air Jordan merchandise and Cincinnati Reds merchandise was missing." *Id*. at 33. Surveillance video obtained from a nearby business revealed that a white vehicle was seen leaving Hibbett Sports at the time of the burglary.

[3]    Then, on June 27, 2016, at 11:02 p.m., officers responded to a similar report from Tri-State Battery in nearby Lawrenceburg. Upon arrival, officers observed that the front glass door had been smashed with "what appeared to be a red paver, or a red round stone." *Id*. at 213-14. Items such as a generator, some water pumps, and a weed trimmer were missing. Also, two cash drawers were gone. Lawrenceburg Police Department Detective Nicholas Beetz was summoned to the scene. Detective Beetz recalled seeing a media release regarding the Hibbett Sports burglary a few days earlier. When Detective Beetz and the owner of Tri-State Battery, Terry Miller, arrived and walked around the property, they noticed that there was an "electronic transformer box behind the building had been knocked off its base several inches." *Id*. at 214. Surveillance video showed a 2010 to 2012 Nissan Versa back into the transformer box causing damage to the vehicle. The driver then drove to the front of the building, opened the hatch of the vehicle, appeared to grab something, and then proceeded "to throw the object inside and through the window of the business." *Id*. at 220. The suspect was "obviously wearing a light colored shirt, light colored gloves, some sort of concealment around the face, a Cincinnati Reds hat, dark pants and white shoes." *Id*. The video showed the person going into the store and carrying items out.

[4]    Detective Beetz sent a text message to Aurora Police Department Detective Vern McBride, the officer investigating the Hibbett Sports burglary, to let him know about the similarities between the two crimes. Detective Beetz also asked Miller to review Tri-State Battery's surveillance video to see if the suspect had

been scoping out the business in the days leading up to the burglary. Miller identified a person, and a vehicle, matching the suspect on video from June 23, 2016. The person had on white shoes, black socks, red basketball shorts, and a white Air Jordan shirt. The person peered inside the front door and the side window of the business for several seconds.

[5] In addition to having Miller review the surveillance video, Detective Beetz gathered more information regarding the Nissan Versa vehicle seen in the video. The vehicle in the video had a front vanity license plate as well as a rear license plate. The vehicle also had a decal on the rear hatch and damage to the right rear bumper where it struck the electrical box. Detective Beetz eventually discovered a vehicle matching the one in the surveillance video registered to Rosalie Rahn in Mount Healthy, Ohio. Detective Beetz traveled to Ohio to speak with Rahn about her vehicle. When the detective arrived, Rahn immediately asked him if he was there about her grandson, Mockbee. Rahn informed Detective Beetz that she had loaned her vehicle to Mockbee during the relevant time frame. Rahn also told authorities that Mockbee was in a relationship with a woman named Melissa Holley who drove a white vehicle. Upon hearing this information, Detective Beetz recalled that a white vehicle had been involved in the burglary at Hibbett Sports. Detective Beetz showed Rahn some still photographs taken from the Tri-State Battery video surveillance on June 23, and Rahn identified the suspect as Mockbee.

[6] Detectives Beetz and McBride gathered information regarding both Mockbee and Holley. They determined that there was an open Department of Child

Services ("DCS") investigation involving Holley's children and that Holley was living at a North Vernon residence owned by Donna Lacey. The detectives spoke with Holley's DCS caseworker, Elizabeth Beesley. Beesley informed the detectives that in June 2016, Mockbee and Holley had a physical altercation at Lacey's house during which the children were present. Mockbee was banned from Lacey's residence, and DCS planned to check on the children thirty days following the incident. Beesley told the detectives that she planned to go to Lacey's residence that day and asked the detectives if they would like to accompany her. The detectives accompanied Beesley to Lacey's residence so that they could speak with Holley and/or Mockbee.

[7] When Beesley and the detectives arrived, they knocked on the door. Lacey was disabled, so her caretaker answered the door. Beesley had met the caretaker on a prior occasion at Lacey's residence. Beesley asked if she and the dectectives could enter the residence to speak to Lacey, and the caretaker invited them into the home. The caretaker led the detectives to Lacey's bedroom. As they walked by the open door to one of the other bedrooms, the detectives could see several articles of clothing that were consistent with items stolen from Hibbett Sports. The officers spoke with Lacey and explained to her why they were there, and she consented to a search of her house, garage, and shed. The officers subsequently obtained and executed a search warrant for the residence. Several items were found that were consistent with the items stolen from Hibbett Sports.

[8] Later that evening, Mockbee, driving Holley's white vehicle, came to Lacey's residence. He was accompanied by Holley, and was dressed in a Cincinnati Reds hat, white Nike shirt, red shorts, and white shoes. These apparel items were consistent with what the suspect wore in the Tri-State Battery surveillance video. Officers searched Holley's vehicle and discovered several items stolen from Hibbett Sports, as well as burglary tools such as a black mask, gloves, rocks, a crowbar, bolt cutters, and a pry bar. Glass fragments that matched the glass doors from Hibbett Sports and Tri-State Battery were also found in Holley's vehicle. Holley admitted to police that Mockbee burglarized Hibbett Sports. Both Mockbee and Holley were arrested. Mockbee was transported to the Dearborn County Law Enforcement Center.

[9] The State originally charged Mockbee with two counts of level 5 felony burglary and one count of level 5 felony conspiracy to commit burglary. However, authorities later discovered that during the booking process at the Dearborn County Law Enforcement Center, Mockbee threw the red shorts he had been wearing in the garbage can instead of putting them in his property bin as instructed. Consequently, the State amended the charging information to include a charge of level 6 felony obstruction of justice. The State also alleged that Mockbee was a habitual offender based on numerous prior Ohio convictions. A jury trial was held from December 5-16, 2016. The jury found Mockbee guilty of both counts of burglary, obstruction of justice, and being a habitual offender. The jury found him not guilty of conspiracy to commit burglary. The trial court sentenced Mockbee to consecutive terms of six years

for each burglary, two and one-half years for obstruction of justice, and six years for being a habitual offender, for an aggregate sentence of twenty and one-half years. This appeal ensued.

## Discussion and Decision

## Section 1 – The State presented sufficient evidence to support the habitual offender determination.

Mockbee first asserts that the State presented insufficient evidence to support the habitual offender determination. Specifically, he argues that his prior convictions are too old and not "serious enough to qualify as prior convictions for purposes of Indiana's habitual offender statute." Appellant's Br. at 22. Upon a challenge to the sufficiency of the evidence to support a habitual offender determination, this Court neither reweighs the evidence nor judges the credibility of the witnesses; rather, we examine only the evidence most favorable to the judgment, together with all the reasonable and logical inferences to be drawn therefrom. *Woods v. State*, 939 N.E.2d 676, 677 (Ind. Ct. App. 2010), *trans. denied* (2011). A habitual offender determination will be sustained on appeal so long as there is substantial evidence of probative value supporting the judgment. *Id*.

The statute in effect at the time Mockbee committed his offenses provided that for a person convicted of a level 5 felony to be adjudicated a habitual offender, the State must prove beyond a reasonable doubt that the person has been convicted of two prior unrelated felonies, at least one of which is not a level 6 or

class D felony, and, if one of the alleged prior unrelated felonies is a level 5 or 6, or class C or D felony, that "not more than ten (10) years have elapsed between the time the person was released from imprisonment, probation or parole (whichever is latest) and the time the person committed the current offense." Ind. Code § 35-50-2-8(c) (2016). We read this language as simply requiring that at least one of the two alleged prior unrelated felonies "is not a level 6 or class D felony" and, if one of the alleged prior unrelated felonies is of a lower level (level 5/6 or class C/D), one of the two alleged prior unrelated felonies must fall within the ten-year period.[1] *See id.*

[12] Here, there is no question that at least one of Mockbee's alleged prior unrelated felonies was more serious than a level 6 or class D felony and that not more than ten years had elapsed between the time he was released from imprisonment, probation, or parole on at least one of his alleged prior unrelated felonies and the current offenses. Specifically, to support the habitual offender charge, the State alleged that in July 2001, in Hamilton County, Ohio,

---

[1] We note that, in analyzing nearly identical language in subsection (d) of the statute, another panel of this Court thought differently and read the language as requiring that each of the alleged prior unrelated felonies fall within the ten-year period; in other words, none of the underlying felony convictions (or release dates) could be more than ten years old. *See Johnson v. State*, 75 N.E.3d 549, 552-53 (Ind. Ct. App. 2017). The *Johnson* panel reasoned that although "the actual words of the statute" did not require such a result, a restrictive reading of the language was consistent with the apparent trend in legislative policy toward lenity. *Id.* at 552. The panel concluded that the legislature intended to provide that "individuals who committed lesser offenses and then stayed clean for long periods" would not face enhancements of the same severity as under previous habitual statutes. *Id.* However, transfer was granted in *Johnson* and that opinion has been vacated by our supreme court. *Johnson v. State*, No. 32S05-1707-CR-469, 2017 WL 3034652 (Ind. July 13, 2017). To the extent that there was any confusion, the legislature recently amended the statute to clarify that the "not more than" ten-year elapsed period simply applies to "at least one" of the underlying felony convictions. Ind. Code § 35-50-2-8(c), -(d) (eff. July 31, 2017); *see Woodruff v. Ind. Family & Soc. Servs. Admin.*, 964 N.E.2d 784, 795 (Ind. 2012) (legislature may pass statutory amendment in order to express original intent more clearly), *cert. denied*.

Mockbee was convicted of safecracking, a fourth degree felony; in April 2002, in Hamilton County, Ohio, Mockbee was convicted of robbery, a second degree felony; and in June 2012, in Scioto County, Ohio, Mockbee was convicted of possession of drugs, a second degree felony, theft of drugs, a third degree felony, tampering with evidence, a third degree felony, one count of receiving stolen property, a fourth degree felony, and five additional counts involving fifth degree felonies.[2] Foreign jurisdiction felony convictions are squarely within the scope of our habitual offender sentencing scheme. *See* Ind. Code § 35-50-2-1 (defining "felony conviction" as a conviction in "any jurisdiction at any time, with respect to which the convicted person might have been imprisoned for more than one (1) year").

[13] The 2002 Ohio robbery conviction, categorized as a second degree felony, was clearly a conviction that Indiana courts would consider more serious than a level 6 or class D felony. A second degree robbery conviction in Ohio required proof that it was committed while armed with a deadly weapon or that the defendant inflicted, attempted to inflict, or threatened to inflict injury. *See* Ohio Rev. Code § 2911.02 (2002). The comparable crime in Indiana would have been classified as a class B felony. *See* Ind. Code § 35-42-5-1. The sentencing range for a class B felony was between six and twenty years, as opposed to the sentencing range for a class D felony, which was between six months and three

---

[2] The trial court noted during sentencing that at the age of forty-one, Mockbee had been "convicted of 26 felonies and 20 misdemeanors for a total of 46 convictions." Tr. Vol. 11 at 85.

years. *See* Ind. Code §§ 35-50-2-5, -7. Accordingly, at least one of Mockbee's prior unrelated convictions was not a level 6 or class D felony.

[14] As for proving that Mockbee served time on at least one of the alleged prior unrelated felonies within the last ten years, one of his 2012 Ohio convictions fits that bill. Although Mockbee now asserts that some of those convictions were subsequently vacated on appeal, *see State v. Mockbee*, 5 N.E.3d 50, 60 (Ohio Ct. App. 2013), the undisputed evidence indicates that his third degree felony tampering with evidence conviction and three-year prison sentence remained intact. *Id*; *see also* State's Ex. 253. Thus, not more than ten years had elapsed between Mockbee's release from imprisonment, probation, or parole on that conviction and the time he committed the current offenses. The State presented sufficient evidence to support the habitual offender determination.

[15] Although the habitual offender determination is supported by sufficient evidence, we observe sua sponte that it does not appear that the habitual offender sentence enhancement was attached to a specific conviction. Appellant's App. Vol. 13 at 131. A habitual offender finding is not a separate crime but an enhancement to an underlying conviction to which it is attached. *Reffett v. State*, 844 N.E.2d 1072, 1074 (Ind. Ct. App. 2006); Ind. Code § 35-50-2-8(j). Thus, we remand with instructions for the trial court to amend the sentencing order to attach the habitual offender sentence enhancement to the sentence on one of Mockbee's level 5 felony burglary convictions.

## Section 2 – The State presented sufficient evidence to support Mockbee's obstruction of justice conviction.

[16]     Mockbee next contends that the State presented insufficient evidence to support his obstruction of justice conviction. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). We look to the evidence and reasonable inferences drawn therefrom that support the conviction, and will affirm if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id*. In short, if the testimony believed by the trier of fact is enough to support the conviction, then the reviewing court will not disturb it. *Id*. at 500.

[17]     To convict Mockbee of obstruction of justice, the State was required to prove that he altered, damaged, or removed any record, document, or thing, with intent to prevent it from being produced or used as evidence in any official proceeding or investigation. Ind. Code § 35-44.1-2-2(a)(3). Here, the State presented evidence that when Mockbee was arrested, "[h]e had a white Nike shirt on and then he had red shorts that were consistent with the red shorts [police] saw in the [Tri-State Battery] video from [June 23]." Tr. Vol. 7 at 79. During the booking process at the law enforcement center, Mockbee was given a bin and instructed to put all his clothing in the bin. Those items are "logged in with any other property that the individual may have on his person" in order "to keep track of it so when the time comes for them to leave, they would be able to have their items back." Tr. Vol. 8 at 22. However, a search warrant

later executed by officers revealed that although the red shorts had been logged in, the shorts were missing from the bin. The shorts were the only item missing. Officers viewed security camera footage from the booking area which showed Mockbee throwing the shorts into the garbage can.[3]

[18] From the evidence presented, the jury could reasonably infer that Mockbee threw his shorts in the garbage can with the intent to prevent the shorts from being produced or used as evidence against him. The red shorts were the only item of clothing that directly linked Mockbee to the Tri-State Battery video, and as noted above, they were the only item that he was wearing during booking that he did not put in the bin. The State presented sufficient evidence to support Mockbee's conviction for obstruction of justice.

## Section 3 – The trial court did not abuse its discretion in admitting certain evidence.

[19] Mockbee challenges the trial court's admission of evidence discovered in Lacey's residence. Specifically, he claims that the police officers' warrantless entry into Lacey's home violated his right against unreasonable search and seizure pursuant to the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution, and therefore any evidence discovered in plain view or subsequently obtained by search warrant

---

[3] The footage also showed another inmate retrieving the shorts from the garbage can. Officers were able to speak to that inmate and to later locate and retrieve the shorts from a third inmate.

was inadmissible.[4]  The admission or exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002).  An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances."  *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001).  Even if the trial court abuses its discretion in admitting certain evidence, we will not reverse if the admission constituted harmless error. *Fox v. State*, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), *trans. denied* (2000). "[T]he ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo." *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

[20]  While Mockbee complains that the warrantless entry into Lacey's home violated his constitutional rights, the State responds, and the trial court agreed, that Mockbee failed to establish that he had a reasonable expectation of privacy in Lacey's residence or that he has standing to challenge the validity of the entry or subsequent search.[5]  We agree with the State and the trial court.

[21]  Under the Fourth Amendment, a defendant has the burden to "demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable[.]" *Minnesota v. Carter*, 525 U.S. 83, 88 (1998).

---

[4] The Fourth Amendment and Article 1, Section 11 protect the "right of the people to be secure in their persons, houses, papers and effects," against unreasonable search or seizure.

[5] The State must raise a defendant's lack of standing to the trial court in order to preserve it for appeal. *Bradley v. State*, 4 N.E.3d 831, 838 (Ind. Ct. App. 2014), *trans. denied*.  The State did so here.

Fourth Amendment rights are personal and may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 139-40 (1978). A defendant aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by the search of a third person's premises has not had any of his Fourth Amendment rights infringed. *Id.* at 134.

[22] Similarly, "[t]o establish standing pursuant to Article 1, Section 11, our supreme court has stated that 'a defendant must establish ownership, control, possession, or interest in the premises searched or the property seized.'" *Allen v. State*, 893 N.E.2d 1092, 1098 (Ind. Ct. App. 2008) (quoting *Peterson v. State*, 674 N.E.2d 528, 534 (Ind. 1996)), *trans. denied* (2009). The court has further stated that a "defendant must show a subjective and objective expectation of privacy in the premises." *Campos v. State*, 885 N.E.2d 590, 598 (Ind. 2008).[6]

[23] Here, Mockbee failed to demonstrate that he had a reasonable expectation of privacy in Lacey's residence. Mockbee consistently maintained to authorities that he neither resided in nor stayed in Lacey's home, and that he instead lived in Ohio. Mockbee produced an Ohio driver's license when he was arrested to prove his claim to the detectives. Lacey, Holley, and Holley's juvenile son each told police that Mockbee did not reside in Lacey's home and that, after he was

---

[6] Although the Indiana Constitution also provides protection for claimed possessions irrespective of the defendant's interest in the place where the possessions were found, *see Campos*, 885 N.E.2d at 598, where a defendant's interest in the seized property is not at issue, there is no difference between the results under the federal and state constitutions. *See Allen*, 893 N.E.2d at 1097. Mockbee alleged solely that he had an expectation of privacy in Lacey's premises, not in the seized property. Therefore, our result is the same pursuant to both constitutional provisions.

previously banned from the residence during the DCS investigation, if he did ever come to visit Holley at Lacey's home, he would sleep in his car. Mockbee's grandmother, Rahn, also advised authorities that Mockbee resided in Ohio.

[24] While Mockbee points to subsequent inconsistent statements by several witnesses during both the pretrial and trial proceedings, pursuant to our standard of review, we need only consider the evidence most favorable to the trial court's decision to admit the evidence. *See Starks v. State*, 846 N.E.2d 673, 679 (Ind. Ct. App. 2006), *trans. denied*.[7] Based on the evidence presented, the trial court properly concluded that Mockbee did not have a reasonable expectation of privacy in Lacey's residence, and that he lacked standing to challenge the warrantless entry into Lacey's home.

## Section 4 – Mockbee has waived our review of the trial court's denial of his motion for severance.

[25] Mockbee next argues that the trial court erred when it denied his pretrial motion to sever the two burglary charges. Indiana Code Section 35-34-1-9(a) provides that

> [t]wo (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:

---

[7] There was ample evidence before the trial court that Mockbee improperly attempted to influence several witnesses to alter their testimony to say that he lived at Lacey's residence.

(1) are of the same or similar character, even if not part of a single scheme or plan; or

(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Subsection 9(a)(1) refers to the nature of the charged offenses, whereas subsection 9(a)(2) refers to the operative facts underlying those charges. *Pierce v. State*, 29 N.E.3d 1258, 1265 (Ind. 2015).

[26] The defendant shall have the right to severance of the offenses "[w]henever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character[.]" Ind. Code § 35-34-1-11.

In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:

(1) the number of offenses charged;

(2) the complexity of the evidence to be offered; and

(3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

*Id.*

[27]     Mockbee filed a pretrial motion to sever which was denied by the trial court. He failed to renew his motion at trial. Therefore, he has waived the right to seek appellate review of the denial of his motion. *See* Ind. Code § 35-34-1-12 (right to severance of offenses is waived by failure to renew motion before or at close of evidence during trial); *Rouster v. State*, 600 N.E.2d 1342, 1346 (Ind. 1992).

[28]     Mockbee attempts to avoid waiver by arguing that the trial court's denial of his motion constituted fundamental error. However, Mockbee's first mention of fundamental error occurs in his reply brief. A party may not raise an issue, such as fundamental error, for the first time in a reply brief. *Curtis v. State*, 948 N.E.2d 1143, 1148 (Ind. 2011). Thus, Mockbee has failed to preserve our review of this issue as well. *See id.*

## Section 5 – The trial court did not err in determining that Mockbee had forfeited his right to self-representation.

[29]     Finally, we address Mockbee's assertion that the trial court erred in determining that he forfeited his right to self-representation. In short, the record indicates that Mockbee was initially represented by counsel, but then knowingly and voluntarily chose to represent himself while two attorneys acted as standby counsel. After numerous warnings about his continued unruly behavior during pretrial proceedings, the trial court subsequently determined that Mockbee had forfeited his right to self-representation.

[30] "A trial judge may terminate self-representation by a defendant who deliberately engages in serious or obstructionist misconduct." *German v. State*, 268 Ind. 67, 73, 373 N.E.2d 880, 883 (1978) (citing *Illinois v. Allen*, 397 U.S. 337, 343 (1970)). Indeed, trial judges "confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." *Gilmore v. State*, 953 N.E.2d 583, 592 (Ind. Ct. App. 2011) (citation omitted).

[31] We need not go into much detail regarding Mockbee's deliberately disruptive courtroom behavior, as it already has been well documented. *See Mockbee v. State*, 80 N.E.3d 917 (Ind. Ct. App. 2017) (appeal from trial court's finding Mockbee in direct criminal contempt). Our review of the voluminous pretrial proceedings convinces us that the trial judge here should be commended for his incredible patience and conscientious attempts to accommodate Mockbee's desire for self-representation. However, enough was simply enough.

[32] Mockbee's claim that he was merely engaged in "spirited discussion" and his unsubstantiated claims that his disrespectful and disruptive behavior was caused by an "untreated mental illness" are not well taken. Appellant's Br. at 48, 50. The trial court did not err in determining that Mockbee forfeited his right to self-representation.

[33] Mockbee's convictions are affirmed. We remand with instructions for the trial court to amend the sentencing order and attach the habitual offender sentence

enhancement to the sentence on one of Mockbee's level 5 felony burglary convictions.

[34] Affirmed and remanded.

Vaidik, C.J., and Mathias, J., concur.