## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 17 2018, 6:07 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John L. Tompkins
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Edwin S. Short,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 17, 2018<br><br>Court of Appeals Case No.<br>18A-CR-429<br><br>Appeal from the Gibson Circuit Court<br><br>The Honorable Jeffrey F. Meade, Judge<br><br>Trial Court Cause No.<br>26C01-1605-F2-447 |

**Barteau, Senior Judge.**

# Statement of the Case

[1] Edwin Short appeals his conviction for conspiracy to deal methamphetamine in an amount of at least ten grams,[1] a Level 2 felony, contending the trial court abused its discretion in the admission of certain evidence during his jury trial. We affirm.

# Issues

[2] Short presents the following restated issues for our review:

> I. Did the trial court abuse its discretion by admitting drug evidence obtained during warrantless searches of a vehicle?
>
> II. Did the trial court abuse its discretion by admitting evidence obtained through wiretap recordings and text messages?

# Facts and Procedural History

[3] Kari Fourthman began using drugs when she was around ten years old. As an adult, she was by then a severely addicted drug user and was purchasing methamphetamine from Melissa Thompson. On one occasion in July or August of 2015, Fourthman and Thompson were at a bar. Thompson introduced Fourthman to a person called Knox, but who was later identified as

---

[1] Ind. Code § 35-48-4-1.1(e) (2014).

Edwin Short.  During the introduction, Thompson referred to Knox as Louis'
boss.  "Louis" was Louis Short, a drug dealer, who was suspected by law
enforcement to be Thompson's drug source.  Tr. Vol. II, p. 18.  Edwin was
displeased with the introduction and denied being the boss.  Nonetheless, after
the two had been introduced, Edwin "fronted" a total of three ounces of
methamphetamine to Fourthman over the course of five separate occasions
during a one-week period.  Tr. Vol. III, pp. 143-44.  Fourthman sold most of
the methamphetamine at a price that would enable her to pay back Edwin
while making a profit for herself and to use the excess methamphetamine to
support her addiction.

[4]     In early October of 2015, Fourthman contacted the Princeton Police
Department, inquiring about working as a confidential informant.  The
Princeton Police Department referred her to the Indiana State Police.
Fourthman began working with Indiana State Police Trooper Lucas Zeien, an
undercover officer in the drug enforcement section.  Fourthman made two
controlled buys from Thompson and introduced Trooper Zeien to Thompson.
Trooper Zeien made two purchases from Thompson during October 2015, each
time buying half an ounce of methamphetamine for $1,000.

[5]     On February 1, 2016, officers sought and received a wiretap warrant for the
cellphone number Fourthman called to contact Thompson.  Sometime around
February 11 through February 13, 2016, officers intercepted phone calls in
which Thompson indicated that she had no methamphetamine to sell and was
awaiting a new delivery.  In one of those calls, Thompson explained that her

daughter, Taylor Cates, would be traveling with Thompson's supplier the next morning at 9:00 a.m.

[6] On February 12, 2016, officers used a pole camera to conduct surveillance on the location of a suspected drug stash house. Officers observed Louis and Taylor entering a black Lincoln passenger car owned by and registered to Thompson. Also, on that date, officers received a pen register[2] warrant to monitor the location of a cellphone that Fourthman identified as belonging to Louis. The officers were able to track the Lincoln and Louis' phone as Louis and Taylor traveled to Jackson, Mississippi and returned to Indiana.

[7] Meanwhile, Edwin was in Indianapolis arranging for his cousin's boyfriend, Travontae Franklin, to "make a run for him" to Jackson, Mississippi in exchange for payment of $1,000. Tr. Vol. III, p. 135. Franklin understood this to mean that he was to pick up drugs for Edwin. Edwin, Franklin, and Franklin's friend, Tyshecqua Cook, left around 11:00 a.m. on February 12, 2016, to drive directly to Mississippi. Edwin gave Franklin a flip phone that could not be traced and provided gas money for the trip.

[8] Once they reached Mississippi, Edwin gave Franklin directions to a house where, after arriving, Franklin and Cook waited outside in the car while Edwin

---

[2] "A pen register is very–it's similar to a wiretap with the exception of you don't get the phone calls, you don't get the text messages, but you get the cellular information. You get the cell site–cell tower information. You get the incoming and outgoing information from who and to who. And it–basically, it's just informational status. It tells you who's calling or who they're receiving calls from or–or texts or such." Tr. Vol. II, p. 208.

went inside. Edwin emerged from the house after about five to ten minutes with Louis and Taylor. Edwin was carrying a bag full of a substance that looked like cocaine. Edwin put the bag in a door panel on the passenger side beneath the window switch of Franklin's vehicle. Franklin testified that the bag fit in the door panel without much effort.

[9] When they left, Cook and Franklin were in Franklin's car and Cook was driving. That car was followed by Edwin, Louis, and Taylor in Thompson's Lincoln. According to Franklin, as they drove back to Indiana from Mississippi, Franklin received phone calls or texts from Edwin instructing them to drive faster or slower.

[10] Officers who were tracking Louis' phone identified and observed the two vehicles traveling together on Interstate 64 and then separately stopped both vehicles after they exited onto U.S. Highway 41 in Gibson County, Indiana. Thompson's car, which was driven by Taylor, was stopped for following a vehicle too closely and for cutting off the officer's vehicle. During the stop, the officer detected a strong odor of marijuana emanating from Thompson's vehicle. Taylor received a traffic ticket, and Louis was arrested for possessing a small amount of marijuana. Edwin, who was in the back seat of the vehicle was not arrested.

[11] In the second traffic stop, officers stopped Franklin's vehicle for a broken tail light and failing to signal a lane change. Officers noted an odor of marijuana emanating from that vehicle as well. Cook, who was driving, received two

traffic citations and a citation for driving a vehicle while her driver's license was suspended. Franklin and Cook provided officers with explanations for their travel which "were not making any sense at all" regarding their timeline and origin. Tr. Vol. II, p. 239.

[12] Franklin and Cook were detained for further investigation due to their confusing stories, apparent anxiety, and the smell of marijuana emanating from the vehicle. Franklin's suspicious behavior included dry heaving, sweating despite the cold weather, and appearing extremely nervous. That behavior prompted a more thorough search of the vehicle for hidden contraband. An officer pried up an armrest pad and observed the white plastic bag. Franklin was arrested. Edwin provided the money to bond Franklin out of jail. He gave the money to his cousin, who was Franklin's girlfriend, who then gave the money to Franklin's mother, who bonded him out of jail. The recovered substance was later identified as 445.65 grams of methamphetamine.

[13] On the day of the traffic stops, police officers intercepted a phone call between Thompson and Edwin. During the call, Thompson asked Edwin, "did you get him out[?]" Tr. Vol. III, p. 85; Exhibit Vol. p. 91. Officers interpreted the question to mean that Thompson was inquiring whether Edwin was able to bond Louis out of jail. Edwin instructed Thompson not to send text messages to Louis "until you know you got the right number . . . you understand what I am saying." Exhibit Vol. p. 91. Police officers interpreted this to be a warning for Thompson not to contact a phone that was seized by police.

[14] Later that day, Louis called Thompson and told her not to call his other phone. He instructed her that she would probably need to throw her phone away because "they got that motherf[****]r." Trans. Vol. V, p. 95. Louis called Thompson again later that day and instructed her to turn off a phone she previously had provided to him.

[15] Cates and Thompson talked on the phone that day. Cates said she learned through Facebook posts that the other car had been stopped "[w]ith 450 f[***]ing grams of meth in their door." *Id.* at 109. Cates told her mother that Louis had called her and indicated that if law enforcement officers found her she should claim that they did not come from Mississippi, that she did not know Edwin and Louis, and that she had picked them up in Evansville. The conversation ended when Thompson saw that she was receiving a call from Fourthman. Cates told her mother not to mention anything to Fourthman.

[16] Fourthman told Thompson to "get on mobile patrol," which is a smart phone application showing Gibson County jail bookings. *Id.* at 114. Fourthman told Thompson to look at the entry for "the girl and guy that is right above him," an apparent reference to an entry above Louis' arrest record. *Id.* Thompson responded, "that's our people right there . . . they got them right after they got pulled over." *Id.* Thompson told Fourthman that she had heard the other car was found to have "400 and some grams of meth." *Id.*

[17] Edwin, Louis, Thompson, Cates and Fourthman were subsequently charged with conspiracy to deal in methamphetamine in an amount of at least ten grams

as a Level 2 felony in Gibson County. A couple of months after the traffic stop, Franklin was approached by Edwin as he was leaving his girlfriend's Indianapolis apartment. Edwin pulled out a gun and shot Franklin three times– in the thigh, the foot, and the stomach. Franklin saw Edwin again in October of 2017. During that encounter, Edwin told Franklin not to take a plea deal because he claimed it would jeopardize everyone. Nonetheless, Franklin later agreed to testify against Edwin in exchange for the dismissal of charges filed against him.

[18] On December 29, 2017, Edwin filed a motion to suppress evidence. He argued that the drugs from Franklin's vehicle should not be admitted because the officers should have been required to seek a search warrant. He further argued that the traffic stop was impermissibly delayed due to a K9 sniff, and the reliability of the K9 had not been established. The trial court took the motion to suppress under advisement and directed the parties to address the matter at trial outside of the presence of the jury.

[19] At the beginning of trial, the State argued that Edwin lacked standing to challenge the admissibility of the drug evidence or that the stop was lawful. Edwin argued that he had standing based on his prior presence in Franklin's vehicle and because the case involved allegations of Edwin's possession of the drugs.

[20] When the methamphetamine was offered as evidence at trial, the State argued that Edwin lacked standing to challenge the search of Franklin's car. Edwin

responded, arguing that he had an interest based on hiring Franklin to drive. Edwin also argued that the methamphetamine was found during an illegal search incident to arrest and that the State should have sought a search warrant. The trial court denied the motion to suppress, arguably finding the evidence was admissible, by stating the following:

> Let's show the Court finds that the stop was reasonable and legal. Second, that Defendant had no expectation of privacy in the lead vehicle he was not riding in, that law enforcement had probable cause and the right to search the vehicle, which was supported by the odor of marijuana and the K-9 alert. Further, that the K-9 search was timely.

Tr. Vol. III, pp. 25-26.

[21] Next, during the trial, Edwin also objected to evidence of recordings and text messages obtained after the wiretap warrant was granted. Edwin contended that the evidence was hearsay, violated his right of confrontation, was irrelevant, was derivative of his suppression issue, and was not supported by evidence that he was a co-conspirator. The State argued that the recordings were admissible as relevant statements made by a co-conspirator. The recordings and text messages were admitted over Edwin's objections.

[22] At the end of the trial, a jury found Edwin guilty as charged. He now appeals.

# Standard of Review

[23] Each of Edwin's arguments challenges the admissibility of certain evidence.[3] A trial court has broad discretion in ruling on admissibility of evidence. *Dycus v. State*, 108 N.E.3d 301, 303 (Ind. 2018). Generally, we will disturb a trial court's admissibility rulings only when the trial court has abused its discretion. *Id.* It is commonly understood that a trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court or if it misapplies the law. *Id.* However, where a constitutional violation is the basis of the challenge, then the appellate standard of review is de novo. *Id.* at 304.

# Discussion and Decision

## I. Admissibility of Drug Evidence

[24] Edwin argues that the trial court erred by admitting evidence seized during searches of Franklin's car. He contends that the searches were illegal because

---

[3] Edwin frames one of the issues as a challenge to the trial court's ruling on his motion to suppress. However, the trial court took its ruling on the motion under advisement to be argued during the trial.

> If a motion [to suppress] is filed prior to trial, the trial court may decide to conduct a pretrial hearing on the motion or may defer consideration of the motion until the challenged evidence is offered at trial.

16A Ind. Prac., Criminal Procedure, Trial § 14.6 (2018). A challenge to a ruling on a motion to suppress after a completed trial is no longer viable. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2018). A trial court's ruling on a pretrial motion to suppress is not intended to serve as a final expression of the trial court's consideration of admissibility at trial. *Id.*

they were conducted without warrants and absent exigent circumstances.  His argument is grounded in Fourth Amendment principles and jurisprudence.

[25] The Fourth Amendment to the United States Constitution provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  "The Fourth Amendment protects citizens against unreasonable searches and seizures." *Hardister v. State*, 849 N.E.2d 563, 569-70 (Ind. 2006).  "The fundamental purpose of the Fourth Amendment to the United States Constitution is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings." *Taylor v. State*, 842 N.E.2d 327, 330 (Ind. 2006).

[26] "To trigger Fourth Amendment protections, a search arises out of an intrusion by a government actor upon an area in which a person maintains a 'reasonable expectation of privacy.'" *Holder v. State*, 847 N.E.2d 930, 935 (Ind. 2006) (quoting *Katz v. U.S.*, 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 587 (1967) (Harlan, J., concurring)).  "For a search to be reasonable under the Fourth Amendment, a warrant is required unless an exception to the warrant requirement applies." *Taylor*, 842 N.E.2d at 330.  The burden of proving that a warrantless search falls within an exception to the warrant requirement rests with the State.  *Id.*  "Therefore, whether Fourth Amendment protections should

be applied embraces a two-part inquiry: (1) whether a person has 'exhibited an actual (subjective) expectation of privacy;' and (2) whether 'the expectation [is] one that society is prepared to recognize as reasonable.'" *Holder*, 847 N.E.2d at 935-36 (quoting *Katz*, 389 U.S. at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 588).

[27] Although Edwin does not address this point, the State contends that the trial court correctly determined that Edwin did not have standing to challenge the search of Franklin's vehicle because he did not have a privacy interest in it.

[28] "Fourth Amendment rights are personal and may not be vicariously asserted." *Allen v. State*, 893 N.E.2d 1092, 1096 (Ind. Ct. App. 2008), *trans. denied* (citing *Rakas v. Illinois*, 439 U.S. 128, 133-34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). Further, "[a] defendant 'aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by the search of a third person's premises has not had any of his Fourth Amendment rights infringed.'" *Id.* (quoting *Rakas*, 439 U.S. at 134, 99 S.Ct. 421). Upon appellate review of whether a privacy expectation exists under a Fourth Amendment analysis, part of our consideration is whether the defendant has control over or ownership in the premises searched. *Allen*, 893 N.E.2d at 1096. "The burden is on the defendant challenging the constitutional validity of a search to demonstrate that he had a legitimate expectation in the premises searched." *Id.*

[29] Edwin, prior to trial, argued that he had standing because the State's conspiracy charge appeared to hold him responsible for possessing the methamphetamine as a co-conspirator. In addition, he argued that he had standing based on his

prior presence in Franklin's car. When the methamphetamine was offered at trial, the State argued that Edwin did not have standing to challenge the search of Franklin's car. Edwin responded by arguing that he had an interest in the search based on his act of hiring Franklin to drive. Further, Edwin argued that the search of Franklin's vehicle was an illegal search incident to arrest and that the State should have sought a search warrant.

[30] Regarding Edwin's claim of an expectation of privacy in Franklin's vehicle, we observe that the United States Supreme Court has already addressed this issue. In *United States v. Padilla*, 508 U.S. 77, 81-82, 113 S.Ct. 1936, 123 L.Ed.2d 635 (1993), the Court quoted its holding in *Alderman v. United States*, 394 U.S. 165, 171-72, 89 S. Ct. 961, 965-66, 22 L.Ed.2d 176 (1969) for the following proposition, which is pertinent to the present case.

> The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Co-conspirators and codefendants have been accorded no special standing.

The codefendants' and co-conspirators' respective roles in the conspiracy do not affect their respective Fourth Amendment rights. *U.S. v. Padilla*, 508 U.S. at 82. Consistent with this precedent, we hold that Edwin did not have an expectation of privacy in Franklin's vehicle under the Fourth Amendment. Furthermore, Franklin testified that he never received the $1,000.00 fee from Edwin. Consequently, Edwin's other challenges to the validity of the search of

Franklin's vehicle fail as well. The trial court did not abuse its discretion in admitting the evidence recovered from Franklin's car.

## II. Admissibility of Wiretap Recordings and Text Messages

Next, Edwin challenges the trial court's decision to admit evidence of wiretap recordings and text messages at trial. Edwin contended that the evidence was hearsay, violated his right of confrontation, was irrelevant, was derivative of his suppression issue, and was not supported by evidence that he was a co-conspirator. The State argued that the recordings were admissible as relevant statements by a co-conspirator. The recordings and text messages were admitted over Edwin's objections.

Hearsay is defined as "a statement that [] is not made by the declarant while testifying at the trial or hearing; [] and is offered to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Statements that are not considered to be hearsay include in pertinent part a "statement [] offered against an opposing party and [] was made by the party's coconspirator during and in furtherance of the conspiracy." Ind. Evidence Rule 801(d)(2)(E).

Our Supreme Court stated the following as respects this rule and the caselaw developed before the rules of evidence were adopted in 1994.

> Indiana case law developed before the adoption of the rules of
> evidence also treated such statements as admissible, but required
> that the State provide other evidence, either circumstantial or
> direct, that the conspiracy existed as a precondition to admitting
> the hearsay. . . .We have viewed this "independent evidence"

requirement as a useful safeguard against abusive use of co-conspirator hearsay, and will continue to apply it to evidence proposed for admission under Rule 801(d)(2)(E).

*Lott v. State*, 690 N.E.2d 204, 209 (Ind. 1997). "The existence of the conspiracy for purposes of Rule 801(d)(2)(E) may be demonstrated by direct or circumstantial evidence." *Cockrell v. State*, 743 N.E.2d 799, 804 (Ind. Ct. App. 2001).

[34] Here, the State presented evidence that Edwin was part of a conspiracy with Thompson and the others to distribute drugs. Thompson was a drug dealer who introduced Edwin as the boss of drug dealer, Louis. Officers believed that Louis was Thompson's supplier and observed Louis at a drug stash house.

[35] Edwin arranged to have Franklin drive a second car to Mississippi and hid the drugs in Franklin's vehicle. Thompson instructed her daughter, Taylor, to drive Louis to and from Mississippi to acquire the drugs. Edwin was a passenger in Franklin's car on the way to Mississippi where he picked up the drugs at a location he knew. He then concealed the drugs in Franklin's vehicle but rode with Taylor in Thompson's car on the trip back to Indiana.

[36] After the group returned to Indiana and those who were arrested were released from jail, Edwin approached Franklin as he was leaving his girlfriend's apartment and shot him three times. Later, Edwin told Franklin not to take a plea deal because it could harm the others.

[37] Here, the State sufficiently established the existence of the conspiracy before the wiretap information and text messages were admitted in evidence. The later admission of additional evidence of the conspiracy does not constitute error. "The order of evidence to be presented is within the trial court's discretion." *Pointer v. State*, 499 N.E.2d 1087, 1089 (Ind. 1986). The evidence was admissible under the hearsay exception for statements by co-conspirators.

[38] Furthermore, the State is required to show the existence of a conspiracy between the declarant and the party against whom the statement is offered and that the statement was made in the course of, and in furtherance of, the conspiracy. *Lander v. State*, 762 N.E.2d 1208, 1213 (Ind. 2002). Each call and text message related to the movement of drugs by the various co-conspirators in furtherance of their conspiracy to deal in those drugs. The State sufficiently established the foundation for the admission of the statements.

[39] Also, Edwin claims that the admission of the wiretap and text message evidence violated his rights of confrontation and cross-examination. However, he has not provided us with any legal authority or analysis to support that contention. When a defendant fails to provide a cogent argument in support of his claim, it is not subject to review. Ind. Appellate Rule 46(A)(8)(a); *Martin v. State*, 736 N.E.2d 1213, 1215 n.5 (Ind. 2000).

[40] Nonetheless, the State did call Thompson, Fourthman, and Cates as witnesses, which provided Edwin with the opportunity to cross-examine them about the statements made in the recordings. Granted, statements made by others who

did not testify were included in the exhibits at issue. However, by that time, error, if any, in the admission of those statements was at best, harmless. Our Supreme Court has stated as follows:

> harmless trial errors fall at one end of our "broad spectrum." An error is harmless when it results in no prejudice to the "substantial rights" of a party. While there are important contextual variations to this rule, the basic premise holds that a conviction may stand when the error had no bearing on the outcome of the case. At its core, the harmless-error rule is a practical one, embodying "the principle that courts should exercise judgment in preference to the automatic reversal for error and ignore errors that do not affect the essential fairness of the trial."

*Durden v. State*, 99 N.E.3d 645, 651-52 (Ind. 2018) (internal citations and footnotes omitted).

The State had already established through testimony of witnesses who were subject to cross-examination that Edwin was involved in the conspiracy to deal in methamphetamine and they described his actions in furtherance of that agreement. Edwin has not established that he is entitled to a reversal of his conviction on this ground. *See* Ind. Trial Rule 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

## Conclusion

Based on the foregoing, we conclude that the trial court did not abuse its discretion in the admission of the challenged evidence.

Affirmed.

May, J., and Pyle, J., concur.