## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 24 2020, 8:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ronald J. Moore
The Moore Law Firm, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James N. Harris, II, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | September 24, 2020 <br><br> Court of Appeals Case No. 20A-CR-870 <br><br> Interlocutory Appeal from the Wayne Superior Court <br><br> The Honorable Gregory A. Horn, Judge <br><br> Trial Court Cause No. 89D02-1912-F3-28 |

**Bradford, Chief Judge.**

# Case Summary

On December 8, 2019, officers responded to a reported domestic incident. When they arrived at the residence in question, the officers encountered James Harris, II. Harris consented to the officers' request to check the residence to ensure that no one was in danger inside the residence. During this welfare check, officers recovered thirty-eight grams of methamphetamine and a syringe from the residence. Harris was subsequently charged with Level 3 felony possession of methamphetamine and Level 6 felony unlawful possession of a syringe. This interlocutory appeal follows the denial of Harris's motion to suppress the evidence recovered during the search of the residence. We affirm and remand for further proceedings.

# Facts and Procedural History

On December 8, 2019, Richmond Police Officers Paul Hutchison and Quinten Schuler were dispatched to 229½ North 10th Street to investigate a reported "domestic with battery." Tr. Vol. II p. 5. Officer Hutchison was advised that Harris was a possible person of interest. When Officers Hutchison and Schuler arrived at the residence, they observed that the door was partially open. Harris, wearing only his underwear, appeared from an upstairs apartment after Officer Hutchison announced himself and Officer Schuler as "Richmond Police." Tr. Vol. II p. 7. Harris consented after Officer Hutchison asked if they could "come up and speak with him." Tr. Vol. II p. 7.

[3]     Officer Hutchison informed Harris of "the nature of the call," "[t]old him that it was a domestic with a battery," and "[a]sked if anybody else was in the apartment." Tr. Vol. II p. 9. Harris, who, based on Officer Hutchison's training and experience as a police officer, appeared to be under the influence of methamphetamine, told Officer Hutchison that "there was no body else there, he was not fighting with anyone." Tr. Vol. II p. 9. Harris consented to Officer Hutchison's request for permission for him and Officer Schuler to "look through the apartment for the … other side of the domestic dispute" and to verify that "everybody's ok." Tr. Vol. II p. 10.

[4]     Officer Hutchison first looked in a bedroom "where [he] saw [Harris] coming from." Tr. Vol. II p. 11. The bedroom, which was "pretty messy," contained male clothing and a bed. Tr. Vol. II p. 11. As Officer Hutchison walked toward a closet, he stepped on a pair of jeans that were on the floor. Officer Hutchison felt "a ball of a … crystal like substance" shift inside a pocket of the jeans underneath his foot and heard "crackling noises" as he stepped on the jeans. Tr. Vol. II p. 12. Officer Hutchison, again based on his training and experience as a police officer, immediately recognized the item he stepped on as being consistent with methamphetamine. After verifying that no one was in the closet, Officer Hutchison "returned back to the" jeans, picked up the jeans, and retrieved the contraband from the right pocket. Tr. Vol. II p. 15. The contraband was packaged "in a plastic bag, tied off," consistent with how Officer Hutchison had "come into contact with methamphetamine in the past."

Tr. Vol. II p. 15. Officer Hutchison continued the search, ultimately verifying that no one else was present in the apartment.

[5] After Officer Hutchison showed Harris the methamphetamine recovered from the jeans, Harris indicated that that "it was not his" and that it belonged to "the female that was in the apartment" before the officers arrived. Tr. Vol. II p. 16. Harris also indicated that the jeans from which Officer Hutchison recovered the methamphetamine "weren't his." Tr. Vol. II p. 16. Harris was placed under arrest after he got dressed, putting on clothes and shoes that were intermingled with the jeans that Officer Hutchison had stepped on. Testing subsequently confirmed that the contraband was approximately thirty-eight grams of methamphetamine. Officers Hutchison and Schuler also recovered a syringe from a pot of water in the kitchen.

[6] On December 9, 2019, the State charged Harris with Level 3 felony possession of methamphetamine and Level 6 felony unlawful possession of a syringe. The State also alleged that Harris was a habitual offender. Harris filed an amended motion to suppress the evidence recovered during the search of the apartment on February 18, 2020.[1] Following a hearing, the trial court denied the motion to suppress, finding that Harris "did not have standing to challenge the constitutionality of the search" of the jeans. Appellant's App. Vol. II p. 60.

---

[1] The initial motion to suppress was filed on January 29, 2020.

# Discussion and Decision

[7] Harris contends that the trial court erred in denying his motion to suppress.

> We review a trial court's denial of a motion to suppress in a manner similar to review of other sufficiency issues. *Taylor v. State*, 689 N.E.2d 699, 702 (Ind. 1997). There must be substantial evidence of probative value in the record to support the ruling of the trial court. *Id.* We do not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court's ruling. *Id.*

*Sanders v. State*, 989 N.E.2d 332, 334 (Ind. 2013). However, "[w]hen the trial court's denial of a defendant's motion to suppress concerns the constitutionality of a search or seizure, … it presents a question of law, and we address that question de novo." *Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014).

[8] During the hearing on his motion to suppress, Harris argued that the warrantless search of the jeans went beyond the scope of his consent. For its part, the State argued that Harris did not have standing to challenge the constitutionality of the search of the jeans. "When the constitutionality of a search is challenged, a defendant has the burden of demonstrating a legitimate expectation of privacy in the premises searched." *Gregory v. State*, 885 N.E.2d 697, 704 (Ind. Ct. App. 2008), *trans. denied*. Acknowledging that Harris had the burden to prove that he had a legitimate expectation of privacy in the apartment, the trial court concluded that "[a]s the burden is upon Defendant to prove standing and he has failed to do so, the Court must find that Mr. Harris lacks standing to challenge the constitutionality of the search of the black

jeans." Appellant's App. Vol. II p. 58. Harris challenges the trial court's decision on appeal, arguing that he had standing to challenge the search under both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

## A. Fourth Amendment

[9] Fourth Amendment rights are personal and may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 425, 58 L.Ed.2d 387, 394 (1978). A defendant "aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by the search of a third person's premises has not had any of his Fourth Amendment rights infringed." *Id.* at 134, 99 S.Ct. at 425, 58 L.Ed.2d at 395. "[I]n order to challenge a search as unconstitutional, a defendant must have a legitimate expectation of privacy in that which is searched." *Livingston v. State*, 542 N.E.2d 192, 194 (Ind. 1989) (citing *Rakas v. Illinois*). In reviewing whether a privacy expectation exists under a Fourth Amendment analysis, this Court also looks to whether the defendant has control over or ownership in the premises searched. *Lee v. State*, 545 N.E.2d 1085, 1091 (Ind. 1989); *Livingston*, 542 N.E.2d at 194; *Stout v. State*, 479 N.E.2d 563, 566 (Ind. 1985). The burden is on the defendant challenging the constitutional validity of a search to demonstrate that he had a legitimate expectation in the premises searched. *Livingston*, 542 N.E.2d at 194.

*Peterson v. State*, 674 N.E.2d 528, 532 (Ind. 1996) (brackets in original).

[10] The inquiry into whether an individual has a legitimate expectation of privacy in a premises normally embraces two discrete questions. *Smith v. Maryland*, 442 U.S. 735, 740 (1979).

The first is whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy," [*Katz v. U.S.*, 389 U.S. 347, 361 (1967)]—whether … the individual has shown that "he seeks to preserve [something] as private." [*Id.* at 351]. The second question is whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable,'" [*Id.* at 361]—whether … the individual's expectation, viewed objectively, is "justifiable" under the circumstances. [*Id.* at 353].

*Id.*

[11] In this case, the trial court found that Harris failed to establish that he had a legitimate expectation of privacy in the apartment. In the amended motion to suppress, Harris referred to the apartment as his "home." Appellant's App. Vol. II p. 51. However, there was no evidence presented during the suppression hearing indicating that Harris lived at the apartment or sought to preserve anything as private.[2] The trial court noted that Harris's "appearance in front of a police officer wearing nothing but his underwear would certainly lead the common man to assume that [Harris] had an expectation of privacy in" the apartment. Appellant's App. Vol. II p. 58. That said, one could just as reasonably assume that the female who had been involved in the reported domestic incident with Harris had the ownership interest in the apartment but had fled to safety.

---

[2] Harris did not testify during the hearing that he resided in the apartment or present any evidence proving that he lived in the apartment.

To the extent that Harris points to his consent for the officers to enter the apartment as proof of his interest in the apartment, we conclude that Harris's act of giving the officers consent to enter the apartment for the limited purpose of conducting a welfare check on any other potential occupants, without more, is insufficient to prove that Harris controlled or owned the apartment. Given the lack of evidence that Harris sought to preserve anything as private or to prove control or ownership, we, like the trial court, conclude that Harris did not have a reasonable expectation of privacy under these circumstances and therefore lacked standing to challenge the constitutionality of the search pursuant to the Fourth Amendment. *See Peterson*, 674 N.E.2d at 533 ("Because we find that, as a matter of law, the defendant lacked standing to challenge the search, we reject his claim that the admission of the shotgun violated his Fourth Amendment rights.").

## B. Article 1, Section 11

To establish standing pursuant to Article 1, Section 11, our supreme court has stated that "a defendant must establish ownership, control, possession, or interest in the premises searched or the property seized." [*Peterson*, 674 N.E.2d at 534]. The court has also stated that a "defendant must show a subjective and objective expectation of privacy in the premises." *Campos v. State*, 885 N.E.2d 590, 598 (Ind. 2008) (citing [*Smith*, 442 U.S. at 740]).

*Allen v. State*, 893 N.E.2d 1092, 1096 (Ind. Ct. App. 2008), *trans. denied*.

"[T]he rights protected under the federal and state constitutions are consistently described as 'personal' rights." *Id.* at 1098–99. Just as "[a] person's Fourth Amendment rights against unreasonable search and seizure are personal," *Best v. State*, 821 N.E.2d 419, 424 (Ind. Ct. App. 2005) (citing *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)), the Indiana Supreme Court has observed that Indiana jurisprudence similarly establishes that the "'right to be secure in their persons, houses, papers and effects, against unreasonable search and seizure [under Section 11] is a personal right of the individual whose person, house, papers or effects are searched or seized.'" *Peterson*, 674 N.E.2d at 533–34 (quoting *Snedegar v. State*, 196 Ind. 254, 257, 146 N.E. 849, 849–50 (1925)).

> Indiana law has also imposed a requirement of standing to challenge a search or seizure—a defendant cannot successfully object to a search of the premises of another if such search does not unlawfully invade his own privacy. *Tongut v. State*, 197 Ind. 539, 544, 151 N.E. 427, 429 (1926). If the facts fail to establish that the alleged illegal search and seizure actually concerned the person, house, papers or effects of the defendant, he will not have standing to challenge the illegality. *Earle v. State*, 194 Ind. 165, 168, 142 N.E. 405, 406 (1924).

*Id.* at 534.

[15]	Again, while Harris referred to the apartment as his home in the amended motion to suppress, Harris failed to present any evidence during the suppression hearing to prove that he had control or ownership of the apartment. Thus, as we concluded above, Harris failed to prove that he had a reasonable expectation of privacy in the apartment.

[16] Harris also failed to prove that he had a reasonable expectation of privacy in the jeans. Officer Hutchison's testimony established that Harris was wearing only his underwear when he and Officer Schuler first encountered Harris. When Harris was placed under arrest and subsequently got dressed, he put on clothes that were intermingled with the jeans in which the methamphetamine was found. However, Harris specifically stated that the jeans in which the methamphetamine was found "weren't his." Tr. Vol. II p. 16. Harris also disavowed ownership of the methamphetamine seized by Officer Hutchison, claiming that it belonged to the female who had been present in the apartment prior to the officers' arrival. By disavowing ownership of the jeans, Harris extinguished any objective expectation of privacy that he might have had in the jeans. Given that Harris lacked an objective expectation of privacy in both the apartment and the item searched, we conclude that the trial court did not err in finding that Harris lacked standing to challenge the constitutionality of the search pursuant to Article 1, Section 11 of the Indiana Constitution.

[17] Because we conclude that Harris failed to meet his burden of proving that he had a legitimate interest in the apartment, we affirm the trial court's determination that Harris lacked standing to challenge the constitutionality of the search of the apartment. Furthermore, while arguments were made before the trial court as to whether the warrantless search of the jeans exceeded the scope of the welfare check or was justified by an exception to the general rule requiring that police secure a warrant prior to conducting a search, the trial court only ruled on the standing issue and did not issue a ruling on whether the

warrantless search of the jeans was otherwise justified. As such, any question as to whether the warrantless search of the jeans fell under an exception to the general rule requiring a warrant is not before the court in the instant appeal and is a question for another day.

[18] The judgment of the trial court is affirmed, and the matter is remanded for further proceedings.

Najam, J., and Mathias, J., concur.